ASHLEY C. MORRILL *vs.* LITTLE FALLS MANUFACTURING Co. *et al.*

Argued May 12, 1893.   Decided June 1, 1893.

**Notice to Stockholders of Corporate Meetings.**

If the charter or by-laws of a corporation fix the time and place at which regular meetings shall be held, this is itself sufficient notice to stockholders, and no further notice is necessary.

**The Stockholders who Attend, whether One or More, Constitute a Quorum.**

Unless otherwise provided in the charter or by-laws of an incorporation, such of the stockholders as actually assemble at a properly convened meeting, whether one or more, and although a minority of the whole number, and representing only a minority of the stock, constitute a quorum for the transaction of business.    The distinction in that regard pointed out between a corporate act to be done by a select and definite body, as by a board of directors or trustees, and one to be performed by the constituent members of the corporation.

### Limitation of Actions for Fraud.

Where a party seeks relief on the ground of fraud more than six years after the commission of the act constituting the alleged fraud, he must allege and prove that the facts were not discovered until within six years before the commencement of the action.

### Pleading the Facts to Obtain Relief on the Ground of Fraud.

If a conveyance was in fact the deed of a corporation, but voidable because of fraud, if stockholders desire to have it set aside on that ground, they must allege the facts constituting the alleged fraud, and ask the appropriate relief; they cannot prove the fraud under a mere denial of the execution of the deed by the corporation.

### Who Entitled to Vote on Stock at Meetings of Stockholders.

Where stock is transferable only on the books of the corporation, the person in whose name the stock stands on such books is entitled to vote it, and the books of the company are conclusive upon the question as to who is entitled to vote stock legally issued.

Certain findings *held* not justified by the evidence.

Appeal by defendants, Little Falls Manufacturing Company, Charles A. Bullen and Charles F. Mayhew, from a judgment of the District Court of Morrison County, *D. B. Searle*, J., entered June 11, 1892, decreeing that neither of them had any title to, or estate in, a large amount of lands and town lots in and near Little Falls in said county.

The plaintiff, Ashley C. Morrill, brought this action, November 15, 1888, under 1878 G. S. ch. 75, § 2, and Ex. Sess. Laws 1881, ch. 81, against the defendants above named, and others, and also all other persons or parties unknown claiming any right, title, estate, lien or interest in the real estate described in the complaint. A notice of the pendency of the action was filed for record and published with the summons. An answer was filed in behalf of the three defendants above named, denying plaintiff's title, but asserting no title in the defendants, or in any of them. On August 24, 1889, the defendants Bullen and Mayhew were permitted by order of the court to serve an amended answer. The plaintiff replied and afterwards moved for judgment on the pleadings. The court granted the motion, judgment was entered and defendants appealed. That judgment was reversed, 46 Minn. 260, and the issues were tried October 27, 1891. Findings of fact and conclusions of law were made and filed April 23, 1892, on which judgment was entered for

the plaintiff June 11, 1892, decreeing that he was the owner in fee of the real estate described in the complaint, and that defendants had not, nor had either or any of them, any right, title or interest in, or lien upon, the property or any of it, and that neither Bullen nor Mayhew was entitled to answer or defend for the corporation, and that they by their acts had estopped themselves from in any manner questioning the plaintiff's title. They made and settled a case containing exceptions and moved for a new trial, which was denied November 5, 1892.

The Little Falls Manufacturing Company was a corporation created by Act of the Legislature of the Territory of Minnesota, Laws 1856, ch. 138, p. 221. It was empowered to buy, hold and sell real estate, and to construct a dam across the Mississippi River at Little Falls, create a water-power, build mills, and carry on manufacturing and other business. Its capital stock was $100,000, divided into shares of $100 each. All the capital was taken and fully paid in. It constructed the dam, built a mill, acquired the title to all the real estate in question in this action, and made extensive improvements. Reverses followed. The dam and mill were swept ·away in a flood. The panic of 1857, and the war of 1861, enhanced the difficulties. The organization of the corporation was kept up until 1864, when both the president and secretary died, and from that time until 1881, no effort was made to elect officers or hold meetings. About this time the property advanced rapidly in value and the plaintiff took measures to acquire title to it. He procured one Samuel Thayer who owned, or held proxies for, one hundred and fifty shares of the stock, to go on the day provided by the by-laws for holding the annual meeting of stockholders, and to alone elect a board of directors, to each of whom he transferred one share of his stock. They elected him president and one Reuben Tomlinson, secretary, and they conveyed the property to William Eustis, and Eustis conveyed it to Thayer, and Thayer conveyed an undivided half to the plaintiff. Afterwards in January, 1883, Thayer quitclaimed the whole to the plaintiff and assigned to him his stock, and he was made president in Thayer's stead. These deeds were not recorded, and other stockholders appeared and attempted to gain possession of the corporation, and its property, now worth many thousands of dollars. This contest between the

two factions is not yet closed. Other and subsequent facts are stated in the opinion. The discussion here was largely upon the facts.

*W. F. Bailey* and *F. W. Lyons,* for appellants.

*Taylor, Calhoun & Rhodes,* for respondent.

MITCHELL, J. This was the ordinary statutory action to determine adverse claims to real property, the plaintiff alleging generally that he was the owner in fee and in possession, and that the defendants claimed some interest adverse to him. Bullen and Mayhew, as stockholders, were admitted to defend on behalf of the defendant corporation, for reasons assigned when the case was here on a former appeal. 46 Minn. 260, (48 N. W. Rep. 1124.)

Their answer, in brief, is that the corporation is the owner of property in controversy; that the interest claimed by plaintiff is by virtue of a deed purporting to have been executed by the corporation to one Eustis on July 11, 1882, and recorded June 18, 1883, which deed they attack on two grounds: (1) That the party by whom it was executed was not an officer of the corporation, and had no authority to execute conveyances in its behalf; and (2) that it was executed without consideration, for the purpose of defrauding the corporation out of the property. On the first ground, if established, the deed would, of course, be absolutely void; on the second ground, it would be voidable only. Upon the trial it was admitted that all the property in dispute, except one tract called the "Hayes Land," formerly belonged to the corporation; hence the plaintiff had to deraign his title from that source. For that purpose, in addition to the deed or deeds executed in 1882, (and which it appears did not cover all the property,) the plaintiff introduced in evidence: (1) Sundry conveyances purporting to have been executed in 1886 and 1887, by or on behalf of the corporation, to various parties to whose rights he had succeeded by mesne conveyance; (2) the records of various sales on execution to one Herrick, (to whose rights he had also succeeded,) on judgments against the defendant corporation, and which have been the subject of much litigation in this court. See *Herrick* v. *Ammerman,* 32 Minn. 544, (21 N. W. Rep. 836;) *Herrick* v. *Churchill,* 35 Minn. 318, (29 N. W. Rep. 129;) *Herrick* v. *Morrill,* 37 Minn. 250, (33 N. W. Rep. 849.)

The attorneys have stipulated into this case the record in the case last cited, but we do not feel called upon to wade through it, to ascertain which of these execution sales were valid, or what part of the property they covered, even if the record contained (which is doubtful) the data from which these facts could be ascertained.

All we deem necessary to consider, for the purpose of a determination of this appeal, are the conveyances purporting to have been made by the corporation to plaintiff's grantors in 1882 and in 1886 and 1887, upon which alone the court below seems to have based its decision in favor of the plaintiff.

To a full understanding of the case, it is necessary to refer briefly to the history of the Little Falls Manufacturing Company. It was a corporation organized in 1856, under a special charter, (Laws 1856, ch. 138,) with power to adopt by-laws determining the amount of its capital stock, and providing for the transfer thereof. It was made the duty of the president, under the authority of the by-laws, or under the direction of a majority of the directors, to execute conveyances, etc., in behalf of the corporation. The corporation adopted by-laws, which provided, among other things, that the shares of stock should be transferable only on the books of the company at Little Falls, in person or by attorney, legally authorized, in presence of the president or secretary, on surrender of the certificate of stock, and that the secretary should certify on the certificate that the transfer had been made. They also provided that the directors should be elected at the office of the company at Little Falls, either in person or by proxy, on the second Monday of August in each year, all votes to be given in proportion to the amount of stock. There was nothing in the by-laws requiring any notice to be given of this annual meeting. The company acquired a considerable amount of real estate in or near what is now Little Falls, and continued in business, or at least kept up its organization, until 1864, by which time it seems to have become hopelessly insolvent, its business wholly abandoned, and the organization practically defunct, without any effort on part of any of the stockholders to revive it, or to look after its property, until 1881,—a period of about seventeen years. In the mean time plaintiff, who as yet had no connection with the company, had been attempting to ac-

quire title to its lands through tax titles, and through the Herrick execution sales. Finally, in 1881, and at the suggestion of plaintiff, one Thayer, for himself and as proxy for certain other stockholders, went to Little Falls, on the second Monday of August, (the time and place fixed by the by-laws for the annual meeting,) and cast the votes of himself and those for whom he was proxy for a board of directors. Thayer was the only person present at the meeting. The same thing was done on the second Monday of August, 1882, by one Tomlinson, who was the only stockholder who was personally present. During these years Thayer acted as president of the company, and, as such, in June, 1882, executed in its behalf the deeds to Eustis already referred to. In June, 1883, a special meeting was called, when, for the first time, the appellants Bullen and Mayhew appeared on the scene; but, as the regularity of this meeting is not here involved, it may be passed over without consideration. At the annual meeting on the second Monday of August, 1883, a large number of stockholders were present, either in person or by proxy, and were divided into two parties, respectively known as the "Morrill Faction" and the "Bullen Faction," each desirous of obtaining control of the corporate organization. Disputes having arisen among them as to the right to vote certain shares of stock, the meeting virtually divided into two, each assuming to hold an election, and each declaring a different set of men elected as directors. These two rival organizations have been continued ever since, each claiming to represent the corporation. It was the president elected by the "Morrill" directors who executed the deeds of 1886 and 1887, under which plaintiff in part claims title. These deeds were executed and recorded before the appellants interposed their answer, but they entirely ignored them, and asked no relief as to them.

As affecting the validity of the deeds executed in 1882, in behalf of the corporation, by Thayer as president, the appellants assail the finding of the court as to the election of directors in August, 1881. The grounds of objection are: *First*, that no notice was given of the meeting; and, *second*, that it required a majority of the shares of stock to constitute a quorum to hold a meeting, or, in any event, that one person could not hold a meeting; that at least two persons are necessary to constitute a corporate meeting.

As to the first point, all that is necessary to say is that the by-laws fixed the time and place of holding the meeting, and neither the charter nor the by-laws required any notice to be given. Under such circumstances, the rule is that the by-laws themselves are sufficient notice to all the stockholders, and no further notice is necessary. 1 Mor. Priv. Corp. § 479.

The second objection is equally untenable. Where the charter and by-laws of a corporation are silent on the subject, the common-law rule is that such of the shareholders as actually assemble at a properly convened meeting, although a minority of the whole number, and representing only a minority of the stock, constitute a quorum for the transaction of business, and may express the corporate will, and the body will be bound by their acts. Cook, Stock & S. §§ 607, 623; 2 Kent, Comm. 293; Mor. Priv. Corp. § 476; *Craig* v. *First Presbyterian Church*, 88 Pa. St. 42; *Rex* v. *Varlo*, Cowp. 248; *Columbia Bottom Levee Co.* v. *Meier*, 39 Mo. 53; *Ex parte Willcocks*, 7 Cow. 402; *Field* v. *Field*, 9 Wend. 395.

The contention of appellants that this rule applies only to such organizations as towns, churches, and the like, and not to stock corporations, finds no support either in reason or authority. The correct distinction is between a corporate act to be done by a select body, of a definite number, as, for example, a board of directors or trustees, and one to be performed by the constituent members of the corporation. In the latter case a majority of those who appear may act. This distinction is clearly made in several of the cases above cited, and also in the leading case of *Rex* v. *Bellringer*, 4 Term R. 810. As was said by Lord Mansfield in *Rex* v. *Varlo, supra:* "It is in the nature of all corporations to do corporate acts; and, when the power of doing them is not specially delegated to a particular number, the general mode is for the members to meet on the charter days, and the major part who are present to do the act. But, when there is a select body, it is a different thing, for then it is a special appointment." And, this being so, it is immaterial whether the number present is only one or more than one. It was held in *Sharpe* v. *Dawes*, 46 Law J. Q. B. 104, followed reluctantly in another case, that one person cannot constitute a quorum; that at least two persons are necessary to hold a corporate meeting; but this decision is based upon a narrow lexicographical definition of

the word "meeting," as the coming together of two or more persons, —a reason that does not commend itself to our judgment.·

Therefore, in our opinion, the court was justified in holding that the election of directors in 1881 was regular; and it follows that the deeds executed in 1882 by Thayer, the president elected by them, were the deeds of the corporation.

· If, however, they were made in fraud of the rights of stockholders, they were voidable at their suit seasonably instituted. Such action would have to be commenced within six years after the discovery by the aggrieved party of the facts constituting the fraud. 1878 G. S. ch. 66, § 6, subd. 6. But, if the acts constituting the fraud were committed more than six years before the commencement of the suit, the party must allege and prove that these facts were not discovered until within six years. *Humphrey* v. *Carpenter*, 39 Minn. 115, (39 N. W. Rep. 67.) The same rule would apply where, as in this case, the defendant, in his answer, seeks the affirmative relief of having the voidable instrument set aside on the ground of fraud. In this case, although more than six years had elapsed, there is not a word of evidence as to when appellants discovered the facts. For anything that appears, they, and every other stockholder, might have had full knowledge of all the facts connected with the transaction the very day on which the deeds were executed. The result is that the appellants were not entitled to any relief as to the deeds of 1882.

2. We now come to the deeds of 1886 and 1887. As already stated, the answer is silent as to these deeds. If they were the deeds of the corporation, but voidable on the ground of fraud, it was incumbent on appellants, if they desired to have them set aside on that ground, to allege the facts constituting the fraud, and ask for the appropriate relief. Not having done so, the only question open to them is whether or not the conveyances were the deeds of the corporation. This depends on whether the person who executed them was president of the corporation,—a question which, in turn, depends on who were elected directors at the annual meeting in August, 1883. There is no question of "*de facto*," as distinguished from "*de jure*," officers involved. Neither set of directors was in possession of the office more than the other. In fact, there appears to have been nothing to take possession of. The "Bullen" directors

never performed any corporate act, and the "Morrill" directors never performed any, except to execute these deeds; and the possession of such fragments of corporate records as were still in existence seems to have been pretty equally divided between them. Hence the matter reduces itself down to the simple question, which set were the *de jure* directors? The evidence on this point is extremely vague and unsatisfactory. Each party relies mainly upon the record of the annual meeting made by itself. But this is merely working in a circle. If it was once established that one party was regular, and represented the corporation, then, of course, the records kept by it would be evidence of the corporate action. But it has to be first determined which party represented the corporation, and on that question neither party could manufacture evidence for itself by making up a pretended corporate record. As might be expected in the case of a corporation organized at so early a date, and which had been practically defunct for so many years, the evidence as to how much stock was out, and who owned it, is exceedingly meager, as well as obscure.

About the only tangible evidence on the subject which we can find is "Book No. 5," introduced by the defendants, which appears to have been the company's record of stock issued, and when and to whom issued or transferred. It appears that, according to the by-laws, stock was transferable only on the books of the corporation. This provision is for the protection and benefit of the corporation, so that it may know with whom to deal as stockholders, and who have a right to vote as such; and, as against the corporation, a transfer of stock is ineffectual until made on the books of the company. The general and better rule is that the person in whose name stock stands on the books is entitled to vote it; that the books of the company are conclusive upon the inspectors as to who are entitled to vote; and that neither inspectors nor stockholders can successfully dispute the right of any one to vote who appears by the company's books to be the holder of stock legally issued. Upon any other rule it would never be known who were entitled to vote until the courts had settled the dispute. A person who has purchased stock, and who desires to be recognized as a stockholder, for the purpose of voting, must secure such a standing by having the transfer recorded upon the books. If the transfer is not duly

made upon request, he has his remedy, to compel it to be made. Cook, Stocks & S. § 611; *People* v. *Robinson*, 64 Cal. 373, (1 Pac. Rep. 156;) *Downing* v. *Potts*, 23 N. J. Law, 66; *State* v. *Ferris*, 42 Conn. 560; *New York & N. H. R. Co.* v. *Schuyler*, 34 N. Y. 30, 80; *Bank of Commerce's Appeal*, 73 Pa. St. 59; *Hoppin* v. *Buffum*, 9 R. I. 513; *In re St. Lawrence Steamboat Co.*, 44 N. J. Law, 529.

Upon examination of the record in this case, we fail to find any competent evidence that the Morrill directors received a majority of the legal votes cast at the meeting of 1883. Out of 311 votes claimed to have been cast for them, 297 were cast by Morrill himself, but there is no evidence that any such amount of stock stood in his name on the stock or transfer books of the company. The main dispute seems to have been as to who was entitled to vote the so-called "Babbett Stock," but none of this stock had been transferred to Morrill on the books of the company, and we have been unable to discover any evidence that he was even the equitable owner of it. The burden was on plaintiff to prove the election of the officers through whose deeds he claims title, and this he has failed to do. This goes to the validity of the deeds of 1886 and 1887, upon which, in part at least, the court below based its decision in favor of plaintiff. We are not able to determine from the record as to how much or to what portions of the property in controversy plaintiff's title depends on these deeds.

Judgment reversed, and new trial ordered.

VANDERBURGH, J., absent, took no part.

(Opinion published 55 N. W. Rep. 547.)

Application for reargument denied June 16, 1893.