ASHLEY C. MORRILL v. LITTLE FALLS MANUFACTURING COMPANY and Others.[1]

March 28. 1895.

No. 9191.

**Findings Supported by the Evidence.**

The various findings of fact made by the trial court, and on which it based its conclusions of law in plaintiff's favor, in this cause, examined. *Held*, that all of such findings, except, perhaps, that as to plaintiff's good faith, which finding we regard as immaterial, were supported by the evidence, and also that they warranted the order for judgment.

[1] Reported in 62 N. W. 548.

Appeal by defendants from a judgment of the district court for Morrison county, Searle, J., in favor of plaintiff. Affirmed.

*W. F. Bailey*, for appellants.

*Taylor, Calhoun & Rhodes*, for respondent.

COLLINS, J.   For the third time this case makes its appearance in this court, it being reported first in 46 Minn. 260, 48 N. W. 1124, and the second time in 53 Minn. 371, 55 N. W. 547.   The nature of the action, the condition of the pleadings, and so much of defendants' history as was deemed pertinent, were fully detailed in the opinion last referred to.   The validity of what is known as the Thayer meeting or organization of 1881 was there affirmed, and, as a result, that the deeds executed by the officers of the corporation in 1882 were, at most, only voidable at the seasonably instituted suit of stockholders claiming to have been defrauded.   It was also held that where, as in this case, a defendant sought the affirmative relief of having the voidable instrument set aside on the ground of fraud committed more than six years prior to the commencement of the action, he must allege and prove that the facts constituting the alleged fraud were not discovered by him until within six years. And it was further held that there was not a word of evidence in the record as to when defendants Bullen and Mayhew discovered the facts on which they based their claim of fraud.   These and other propositions brought the case down to a consideration of the deeds made in 1886 and 1887, the answer being silent as to those deeds; and it was said that if they were the deeds of the corporation, but voidable because fraudulent, it was required of said defendants, the present appellants, if they wished to have them set aside for that reason, to allege the facts constituting the fraud, and to ask appropriate relief.   These views left open to them a single question, and that was whether the conveyances were the deeds of the corporation, and this depended on who were elected directors at the annual 1883 meeting of the stockholders.   On examination of the record, we failed to find any competent evidence that the so-called Morrill directors were elected at that meeting.   As the burden of proof was on the plaintiff to prove the election of the officers through whose deed he claimed title to the land in dispute, and he had failed to do

so, the judgment in his favor was reversed, and a new trial ordered. Before entering upon a new trial defendants amended their answer so that they might attack and endeavor to have set aside, as a fraud upon them, the deeds we have just mentioned, and the parties again went to trial without a jury.   In respect to the 1881 Thayer meeting and organization, the testimony adduced by plaintiff was of greater probative force than that received at the former trial.   We need not discuss it, or other evidence on which the court below based its findings of fact, bearing upon and sustaining the conveyances of 1882, and its conclusion that the appellants were not entitled to any relief as to these conveyances.   Nor shall we spend any time on the claim persistently made by appellants' counsel that the deed to Eustis, and the one from him to Thayer, are void on their face. It was held on the former appeal that these conveyances were, at most, voidable, and we have discovered no reason for now holding otherwise.   As the court below determined that appellants were not entitled to avoid and have them set aside on findings of fact, which were supported by the testimony, the question of the validity of the conveyances, made in 1883, must be regarded as at rest in this case.   This brings us to a consideration of the deeds made in 1886 and 1887, and, as before, their validity depends primarily on whether what are known as the "Morrill directors" were lawfully elected at the stockholders' meeting, in 1883.   If they were, the Morrill organization was legal, the conveyances last mentioned were prima facie valid, and could only be avoided in due season, at the instance of defrauded stockholders.   The trial court found, as a fact, that the plaintiff, and those who have been termed his faction, cast a majority of the votes at the annual 1883 election; that his board of directors was duly elected; and, as a conclusion, that his was the regular, lawful, and valid organization.   As a consequence, it held the conveyances now under consideration to be good, except as they might be impeached and avoided on the ground of fraud. This finding of fact was supported by the evidence, and we do not feel it necessary to detail and discuss the proofs, for the purpose of showing why it is so.   It is enough to say that, in any possible aspect of the testimony, it was well established that plaintiff's faction had and held, were entitled to vote and did vote, a majority of all the stock shares voted or offered to be voted at the 1883 meeting

of the stockholders, at which both factions were present and participated, more or less.

We now come to the question of whether these conveyances should have been avoided and set aside on the ground of fraud. As before stated, the original answer was silent as to these deeds, and it was only by amendments to the answer, in August, 1893, and again by amendment, in October, 1893, that they were questioned. So that the cross action set up by amendments, whereby appellants sought affirmative relief from these conveyances, because fraudulent, was not commenced within the period of six years from the time of the execution and delivery thereof. The court found that the appellants had not by their evidence brought themselves within the rule established by the statute of limitations allowing an attack upon the deeds on the ground of fraud. In other words, that the appellants had failed to show, as it was necessary for them to do, that the facts on which they relied as constituting the fraud had been discovered by them within six years prior to the instituting of their cross action, the rule being stated in the opinion in 53 Minn. and 55 N. W. We have carefully examined the evidence as to this point, and are convinced that the finding cannot be disturbed. Taking appellants' testimony, as a whole, with regard to when they learned of the facts, it was of a negative character, and left what they knew and when they were first informed of the facts very uncertain and doubtful. The testimony produced by the plaintiff on this point conflicted with that of appellants', and we are not to consider the weight of evidence on appeal. Where it is conflicting, a finding by the trial court must stand.

Again, it is to be noticed that plaintiff's title to all of the lands described in the complaint, except the town lots, which lots were laid out and platted on governmental subdivision section 8, was derived from sources independent of the defendant company, in some instances through valid execution sales made of the company's property, years before, to satisfy judgments against it, and in others through valid tax proceedings, certificates, and notices of expiration of redemption. It is also true that all lands claimed by appellants to have been the subject of plaintiff's fraudulent acts were included in the Eustis deed of 1882, except lot 1 of section 18. The plaintiff's title to the lands conveyed by the 1882 and 1883 deeds did not

depend upon the conveyances we have just considered, made several years later, and a successful attack upon them would not reach the earlier instruments. As to lot 1 in section 18, the court held that plaintiff had obtained title to it by and through certain tax proceedings, a tax sale, and certificate on which notice of expiration of the period of redemption had been duly issued and given; and that such period of redemption had expired before the commencement of this action. As to these tax proceedings, the counsel makes the point that the notice was published but 13 days, not 21, as required by law. This claim must have been made under a misapprehension. But we need not go into this, nor into an inquiry as to plaintiff's right as an officer and agent of the company to acquire a tax title against its property, because it has been determined that the findings in relation to the 1886 and 1887 deeds are supported by the evidence, and that appellants have failed to show that they were entitled to relief as to them. The finding that plaintiff purchased in good faith is assailed by counsel, but, in view of the conclusion reached as to the first Eustis deed, we cannot see that the finding is of much consequence or importance, one way or the other. If the attack upon that deed upon the ground of voidability had been made within the time prescribed by the statute of limitations, the good faith of plaintiff, as a purchaser, would have been quite material. But the attack was not made, and hence it becomes immaterial whether plaintiff, or even Eustis, was or was not a bona fide purchaser. The real questions of law in the case were disposed of when it was last before us, so that we have had to do with the findings of fact and nothing else on this appeal. We have not felt it incumbent upon us, or essential to a determination of the case, to again lay down the controlling propositions of law, many of which have been reargued by counsel.

Judgment affirmed.

CANTY, J. I concur in the foregoing opinion, for the reason that the decision of this court in the former appeal (53 Minn. 371, 55 N. W. 547) must be taken as the law of this case. But it seems to me that, after a corporation has voluntarily abandoned its organization for 17 years, stockholders representing a minority of the stock have no right, without notice, to meet on the day which would

have been election day if the organization had not been abandoned, and proceed to reorganize the corporation. When the stockholders have voluntarily abandoned the corporate organization for a considerable length of time, it amounts to an implied agreement between the stockholders that such organization shall remain suspended indefinitely. Any stockholder has a right to revoke this agreement, but he has no right to violate it. In order to revoke it, he should use reasonable diligence—do what is reasonable—to give actual notice of such revocation to all the other stockholders. Whether or not the charter or by-laws require notice of election, it seems to me is immaterial. The notice so required may be constructive, but that notice alone is not sufficient. It is a mere notice of election of officers of a live corporation. The notice required of him is that he proposes to revive a dead corporation,—a very different matter. He proposes to change the status of the corporation itself. It seems to me that even a majority of the stockholders should not be allowed to do this after so long a time without in good faith using reasonable effort to give actual notice to the other stockholders. It seems to me that the rule laid down in the former opinion establishes a dangerous precedent. Such defunct corporations are becoming very numerous. If they can be revived secretly or clandestinely by a stockholder having a share or two of stock, and new liabilities incurred, for which the other stockholders will be liable, much mischief may result.