## NATIONAL LABOR RELATIONS BOARD v. STANDARD LIME & STONE CO.

### No. 5350.

Circuit Court of Appeals, Fourth Circuit.

May 11, 1945.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

Guy Farmer, Associate Gen. Counsel, National Labor Relations Board, of Washington, D. C. (Alvin J. Rockwell, Gen. Counsel, Malcolm F. Halliday, Associate Gen. Counsel, Marcel Mallet-Prevost and Margaret M. Farmer, Attys., National Labor Relations Board, all of Washington, D. C., on the brief), for petitioner.

Lacy I. Rice, of Martinsburg, W. Va., and Harry N. Baetjer, of Baltimore, Md.

(Venable, Baetjer & Howard, of Baltimore, Md., and Rice & Hannis, of Martinsburg, W. Va., on the brief), for respondent.

PARKER, Circuit Judge.

This is a petition to enforce an order of the National Labor Relations Board directing the Standard Lime and Stone Company to bargain collectively with an A. F. of L. union as the bargaining representative of its employees. The company resists enforcement on the ground that the union has not been chosen as bargaining representative because (1) a majority of eligible employees did not participate in the election at which the union was chosen, (2) the election was not representative of the choice of the majority and (3) opportunity was not given, in a run-off election between two unions, to vote against representation by either.

The facts are that a United Mine Workers union petitioned the Board to make an investigation and certify a bargaining representative for the employees of the company. An A. F of L. union intervened in this proceeding and on April 13, 1943, the Board proceeded to hold an election at which the company's employees were allowed to indicate by secret ballot their choice of the U. M. W. union, the A. F. of L. union or "neither" as bargaining representative. 439 employees were eligible to vote in this election, but only 218 votes were cast. 99 of these were cast for the A. F. of L. union, 62 for the U. M. W. union and 57 for "neither". The company then asked that the petition be dismissed, but both unions asked that a run-off election be held and, on May 14, 1943, one was held between the two unions, with the "neither" choice eliminated. At the time of the run-off election, 409 employees were eligible and 166 voted, one of the ballots being void. 137 votes were cast for the A. F. of L. union and 28 for the U. M. W. union.

Both elections were fairly advertised and properly held and there is no evidence of coercion of interference on the part of the company or anyone else, and nothing to indicate that they were not fairly representative of the sentiment of the employees. The Board found that the vote was "substantial and representative" and certified the A. F. of L. union as the bargaining representative. The company's refusal to bargain with the union was found by the Board to be an unfair labor practice and the usual order was entered directing the company to bargain with it.

On the first and principal question, that presented by lack of majority participation in either of the elections, we think that the conclusive answer is found in the decision of the Supreme Court in Virginian R. Co. v. System Federation No. 40, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789, affirming the decision of this court reported in 4 Cir., 84 F.2d 641.[1] In that case both this court and the Supreme Court held that, in employees' elections under the Railway Labor Act, 45 U.S.C.A. § 151 et seq., for the selection of bargaining representatives, the political principle of majority rule should be applied, viz., that those not participating in the election must be presumed to assent to the expressed will of the majority of those voting, so that such majority determines a choice. The Supreme Court said [300 U.S. 515, 57 S.Ct. 605]: "Section 2, Fourth, of the Railway Labor Act * * * provides: 'The majority of any craft or class of employees shall have the right to determine who shall be the representative of the craft or class for the purposes of this Act (chapter).' Petitioner construes this section as requiring that a representative be selected by the votes of a majority of eligible voters. It is to be noted that the words of the section confer the right of determination upon a majority of those eligible to vote, but is silent as to the manner in which that right shall be exercised. Election laws providing for approval of a proposal by a specified majority of an electorate have been generally construed as requiring only the consent of the specified majority of those participating in the election. [Board of Supervisors of] Carroll County v. Smith, 111 U.S. 556, 4 S.Ct. 539, 28 L.Ed. 517; Douglass v. Pike County, 101 U.S. 677, 25 L.Ed. 968; Louisville & N. R. Co. v. County Court of Davidson County, 1 Sneed, Tenn., 637, 62 Am.Dec. 424; Montgomery County Fis-

---

[1] In the Virginian Railway case a majority of the employees participated in the election, but the ground of the decision, the political principle of majority rule with the presumption that those not voting assent to the expressed will of the majority voting, supports the choice made in an election, whether the majority of employees has participated or not.

cal Court v. Trimble, 104 Ky. 629, 47 S. W. 773, 42 L.R.A. 738. Those who do not participate 'are presumed to assent to the expressed will of the majority of those voting.' Cass County v. Johnston, 95 U.S. 360, 369, 24 L.Ed. 416, and see Carroll County v. Smith, supra. We see no reason for supposing that section 2, Fourth * * *, was intended to adopt a different rule."

■ And we see no reason to think that a different rule was intended by the National Labor Relations Act. The pertinent language of that act is: "Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining", 29 U.S.C.A. § 159. There would seem to be no material difference between the meaning of this provision and of that contained in the Railway Labor Act. That the provision quoted from the National Labor Relations Act was intended to apply to the selection of bargaining agents by employees the political principle of majority rule, is expressly stated in the Report of the House Committee accompanying the bill, where it is said: "Section 9 (a) incorporates the majority rule principle, that representatives designated for the purpose of collective bargaining by the majority of the employees in the appropriate unit shall be the exclusive representatives of all the employees" etc. Report No. 1147 of the House Committee on Labor to accompany S.1958, June 10, 1935, 74th Cong., 1st Sess., p. 19. The majority rule principle was that which had been adopted in the Railway Labor Act.[2] Its application in ordinary political elections to situations where a majority of the votes cast was less than a majority of those qualified to vote had been settled in Carroll County v. Smith, supra, and other decisions of the Supreme Court. The Virginian Railway decision gave it the same meaning when applied to industrial elections that it had when applied to ordinary political elections, and we see no reason to give it any different meaning here.

Although there is no decision of the Supreme Court holding that a majority of the votes cast in an election is sufficient for the choice of a bargaining representative under the National Labor Relations Act, this is the holding of the Labor Board and of all of the Circuit Courts of Appeals which have had occasion to pass upon the question. See N. L. R. B. v. Central Dispensary & Emergency Hospital, App.D.C., 145 F.2d 852, certiorari denied 65 S.Ct. 684; New York Handkerchief Mfg. Co. v. N. L. R. B., 7 Cir., 114 F.2d 144, 148–149, certiorari denied 311 U.S. 704, 61 S.Ct. 170, 85 L.Ed. 457; N. L. R. B. v. National Mineral Co., 7 Cir., 134 F.2d 424, 426–428, certiorari denied, 320 U.S. 753, 64 S.Ct. 58, 88 L.Ed. 448; N. L. R. B. v. Whittier Mills Co., 5 Cir., 111 F.2d 474, 477, 478; Marlin-Rockwell Corporation v. N. L. R. B., 2 Cir., 116 F. 2d 586, 588, certiorari denied 313 U.S. 594, 61 S.Ct. 1116, 85 L.Ed. 1548; Matter of Western Foundry Co., 42 N. L. R. B. 302; Matter of Spring City Foundry, 11 N. L. R. B. 1286; Matter of R. C. A. Mfg. Co. Inc., 2 N. L. R. B. 159, 173. There are no contrary decisions.

The company seeks to distinguish the Virginian Railway case and certain other of the decisions above cited on the ground that a majority of the employees participated in the elections there; but nothing in the statute furnishes the basis for such distinction. The statute requires that bargaining representatives be selected by the majority of the employees; and certainly a majority in favor of a representative cannot be scraped up by counting those who voted against him. The statute

[2] The House Committee, reporting on the bill which became the National Labor Relations Act, said: " * * * the bill is merely an amplification and further clarification of the principles enacted into law by the Railway Labor Act and by section 7(a) of the National Industrial Recovery Act, 48 Stat. 198; with the addition of enforcement machinery of familiar pattern." Report of the Committee on Labor to accompany S.1958, House Report No. 1147, 74th Congress, 1st Session, June 10, 1935, p. 2. That Congress understood the Railway Labor Act to provide for choice by a majority of those voting, is shown by the Senate Committee's report on the 1934 amendment where it is stated: "The bill specifically provides that the choice of representatives in any craft shall be determined *by a majority of the employees voting on the question.*" (Italics supplied). Report of Committee on Interstate Commerce to accompany S.3266, Senate, 73rd Congress, 2nd Session, Report No. 1065, May 10 (calendar day May 21, 1934,) p. 2.

makes no provision for a quorum nor for the participation of any definite proportion of the employees in the election.[3] It is, of course, the duty of the Board to see that the election is fairly advertised and held and that the results are fairly representative of the wishes of the employees; but where these conditions are met and no undue pressure is exerted, there is no reason why the ordinary political rule should not be applied, viz., that those who do not take the trouble to vote acquiesce in the choice registered by the majority of those voting.

In three of the cases cited, the New York Handkerchief Mfg. Co. case and the National Mineral Co. case from the 7th Circuit, and the Central Dispensary and Emergency Hospital case from the District of Columbia, only a minority of the qualified employees participated in the vote, and the question before us was squarely presented and carefully considered. The company points out that in the Seventh Circuit cases there was evidence of employer interference in the elections; but this was significant only on the question as to whether the Board was justified in considering the result of the elections as representative. It is manifest, of course, that, if it is necessary to a choice of representatives that a majority of employees participate in the election, such majority cannot be spelled out of an unfair labor practice which interferes with such participation. In the District of Columbia case, as here, there was no unfair labor practice and the decision of the court was placed squarely on the proposition, which we think sound, that a majority of those participating in an election, properly advertised and held, will determine a choice if it is fairly representative of the wishes of the employees. The court said in that case, 145 F.2d at page 854: "The real test is whether the election is actually representative. This is always a question of fact in the particular case. The Board has recognized this principle by an administrative ruling that in minority elections it will investigate and determine whether the election was actually representative. It did so in this case and affirmatively found that the election was representative. This interpretation seems to be within the spirit of the warning given by the court in the New York Handkerchief case, supra, and we think should be approved. While the standards by which the Board determines whether a minority election is truly representative are necessarily vague, they may still be subject to judicial examination and review in case the judgment of the Board is arbitrary."

There is every reason to apply the sensible political rule to elections of this sort, and no reason that we can see to the contrary. The elections are held, not for the purpose of choosing representatives for the employees in their private and personal capacities, but for the purposes of collective bargaining, i.e. for the purpose of setting up industrial democracy by choosing some one to represent the interest of the employees in determining the rate of wages, hours of work, living conditions, etc., for the plant. The establishment of such industrial democracy is the avowed purpose of the National Labor Relations Act, which declares it to be in the public interest because of its tendency to preserve industrial peace and prevent interference with interstate commerce. 29 U.S.C.A. § 151. This being true, it would be as absurd to hold that collective bargaining is defeated because a majority of employees fail to participate in an election of representatives as it would be to hold that the people of a municipality are without officers to represent them because a majority of the qualified

---

[3] The company's citation of 13 Am.Jur. Corp. 480, invoking the rule applicable in corporate elections is not fortunate. The rule there stated is as follows: "In the absence of any regulation in the general laws, the charter of the corporation, or its bylaws governing the determination of a quorum, any number of shareholders present at a duly called meeting constitute a quorum and may transact business thereat, even though they may not represent a majority of the outstanding stock or be a majority in number of the shareholders." This is in accord with the rule stated by Judge Mitchell in Morrill v. Little Falls Mfg. Co., 53 Minn. 371, 55 N.W. 547, 549, 21 L.R.A. 174. See also notes in 21 L.R.A. 174 and 42 L.R.A.,N.S., 800. The distinction as to the requirement of participation by a majority is "between a corporate act to be done by a select body, of a definite number, as, for example, a board of directors or trustees, and one to be performed by the constituent members of the corporation. In the latter case a majority of those who appear may act." Morrill v. Little Falls Mfg. Co., supra.

voters do not participate in an election held to choose such officers. In the one case, as in the other, the representative is being chosen to represent a constituency because it is in the public interest that the constituency be represented; and all that should be necessary is that the election be properly advertised and fairly held and that the settled principle of majority rule be applied to the result. If the employees do not wish to be represented in collective bargaining they can so declare in the election; but where, as here, only a comparatively small number so express themselves the result should not be the same as if a majority had so voted. We pointed out in the Virginian Railway case the disadvantages and dangers which would follow from failure to apply the political rule in such elections.

█ The contention that the election was not representative is without merit. The Board found that the vote was substantial and representative, and there is nothing in the record to the contrary. The company's argument on the point resolves itself into a contention that an election should not be permitted to determine a choice unless there is affirmative showing that a majority either participated or was prevented in some way from participating; but there is nothing in the statute or in reason to support such a position. It is for the Board, not us, to say whether an election is fair and representative; and where the record shows that over forty per cent of the company's employees participated in it and that it was fairly advertised and conducted, we cannot say that the Board's finding that it was representative is arbitrary and unreasonable or without support in the record.

█ And we are not impressed with the contention that the Board's certification may be ignored because "neither" was omitted from the choices submitted in the run off election. On the first election only 57 of the votes cast registered that choice, which was less than the votes cast for either of the unions. It could not be unreasonable to drop in the run-off the choice which had received the lowest number of votes. This is quite usual procedure in other elections and we can see nothing unfair in applying it here. A former policy of the Board with respect to such cases was to drop from the ballot the organization receiving the smaller number of votes and limit the choice in the run-off between the organization receiving the larger number and no representative. Matter of Aluminum Company of America 12 N. L. R. B. 237, 239; Matter of Coos Bay Lumber Co. 16 N. L. R. B. 476, 479, 480. The practice of dropping the choice "neither" from the run-off ballot was adopted in 1940. Matter of R. K. LeBlond Machine Tool Co. 22 N. L. R. B. 465; Fifth Annual Report of N. L. R. B. p. 60. It is based upon the Board's view that, where in an original election the combined vote for two labor organizations constitutes a majority of the votes cast, the employees have expressed a desire to bargain collectively through some representative.

It is worthy of note that some time after the elections here were held the Board conducted a public hearing for the purpose of determining its future policy in dealing with run-off elections and solicited the views of employees and labor organizations. As a result of the hearing some changes were made in certain of the rules as to run-off elections, but the rule here applied was not changed. We think there can be no question but that the rule applied was in accord with the Board's settled and established policy and well within the discretion vested in it under the law. "The Board enjoys a wide discretion in determining the procedure necessary to insure the fair and free choice of bargaining representatives by employees." Southern S. S. Co. v. N. L. R. B., 316 U.S. 31, 37, 62 S.Ct. 886, 890, 86 L.Ed. 1246; N. L. R. B. v. Waterman Steamship Corporation, 309 U.S. 206, 226, 60 S.Ct. 493, 84 L.Ed. 704; N. L. R. B. v. Falk Corporation, 308 U.S. 453, 458, 60 S.Ct. 307, 84 L.Ed. 396.

For the reasons stated, we are of opinion that the company has advanced no adequate reason for not bargaining with the union certified by the Board, and that the findings and order of the Board are sustained by the record. Its order will accordingly be enforced.

Order enforced.