## CARROLL COUNTY *v.* SMITH.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF MISSISSIPPI.

Argued April 27th, 1884.—Decided May 5th, 1884.

*Municipal Bonds—Construction of Statutes—Estoppel—Conflict of Law—State Courts.*

A recital in a bond issued by a municipal corporation in payment of a subscription to capital stock in a railway company, that it is authorized by a statute referred to by title and date, does not estop the municipality in a suit on the bond from setting up that the issue was not authorized by vote of two-thirds of the voters of the corporation, as required by the Constitution of the State.

A provision in the Constitution of Mississippi, that the legislature shall not authorize a county to lend its aid to a corporation unless two-thirds of the qualified voters shall assent thereto at an election to be held therein, does not require an assenting vote of two-thirds of the whole number enrolled as qualified to vote, but only two-thirds of those actually voting at the election held for the purpose. *Hawkins* v. *Carroll Co.*, 50 Miss. 735, disregarded, and *St. Joseph's Township* v. *Rogers*, 16 Wall. 644, and *County of Cass* v. *Johnston*, 95 U. S. 360, followed.

The issuing of a temporary injunction, which was afterwards made permanent, by a State court, restraining municipal officers from issuing municipal bonds, does not estop a *bona fide* holder for value, who was no party to the suit, from maintaining title to such bonds issued after the temporary injunction.

The decision of the highest court of a State, construing the Constitution of the State, is not binding upon this court as affecting the rights of citizens of other States in litigation here, when it is in conflict with previous decisions of this court, and when the rights which it affects here were acquired before it was made.

This was an action at law brought to recover the amount of certain overdue interest coupons, upon municipal bonds, alleged to be obligations of the plaintiff in error, delivered and payable to the Greenville, Columbus and Birmingham Railroad Company or bearer, for $1,000 each. Each bond contained the following recital:

⊢ "The above mentioned sum being a part of a subscription to the capital stock of the Greenville, Columbus and Birmingham Railroad Company, authorized by the following styled acts of the State of Mississippi, viz. : An act entitled 'An act to incorporate the Arkansas City and Grenada Railroad Company,' approved March 5th, A. D. 1872, and an act entitled 'An act to amend an act entitled an act to incorporate the Arkansas City and Grenada Railroad Company, approved March 5th, 1872,' approved March 4th, A. D. 1873."

The act first referred to contained the following :

"Sec. 19. *Be it further enacted,* That upon application by the president or other authorized agent of said corporation to the constituted authorities of any county, city or incorporated town in the State of Mississippi, or adjacent to the main line and branch railroad of this corporation, for a subscription to a specified amount of the capital stock of said corporation, said constituted authorities are hereby required, without delay, to submit the question of 'subscription' or 'no subscription' to the decision of the qualified voters of said county, city or incorporated town, at a special or regular election to be held therein, and if two-thirds of said qualified voters be in favor of said subscription, the constituted authorities of said counties, cities or incorporated towns are hereby required, without delay, and are authorized and required to subscribe to the capital stock of said corporation to the amount agreed upon ; and bonds of the county, city or incorporated town making the subscription, having such time to run and such rates of interest as may be agreed upon, shall be issued, without delay, by the authorities of the counties, cities, or incorporated towns, to the president and directors of said corporation, to the amount of said subscription to the capital stock." * * *

The second act recited had the effect merely to change the

name of the company to that of "The Greenville, Columbus and Birmingham Railroad Company."

The complaint alleged that the bonds and coupons described were delivered by the county of Carroll to the railroad company, for value, and that the plaintiff became a purchaser thereof for a valuable consideration before maturity, and was an innocent holder thereof without notice.

The defendant pleaded three pleas, of which the first in order is as follows : ·

" And for further plea in this behalf said defendant, by attorney, says *actio non*, because it says that on the 3d day of March, 1873, on the application of the president of the Greenville, Columbus and Birmingham Railroad Company, a corporation in this State, the board of supervisors of the county of Carroll ordered a special election to be held in said county on the 1st day of April, 1873, at which the question of subscription, or no subscription, by said county to the capital stock of said railroad company was to be submitted to the qualified voters of said county. And said defendant avers that said election was accordingly held, and said defendant avers that on the 1st day of April, 1873, the names of 3,129 registered voters were on the registration books of said county, and there were in fact on the 1st day of April, 1873, three thousand one hundred and twenty-nine qualified voters in said county, but that only 1,280 of said voters voted at said election, of whom 918 voted in favor of the proposition to subscribe for said stock and 362 voted against it, as fully appears by the returns of the three registrars of said county, filed with the clerk of said board of supervisors of said county. And said defendant says that, notwithstanding the refusal of two-thirds of the qualified voters of said county to vote in favor of the subscription for stock, the then board of supervisors of said county, in violation of their duty and the trusts reposed in them, and in violation of the Constitution of the State of Mississippi, subscribed to the capital stock of said railroad company, and issued the bonds and coupons in the declaration mentioned in fact, for said subscription for said capital stock in said railroad company, without any statement or recital in said bonds that two-thirds of the qualified voters of said county had assented thereto. And this the said defendant is ready to verify. Wherefore it prays judgment, &c."

The second was like the first, with the additional averments that the said returns of the registrars of the county, filed and deposited with the clerk of the said board of supervisors of said county, was "at all times open to the inspection of all persons in the public office of the clerk of the Chancery Court of said county; and said defendant avers that the said registration of voters of said county was a book of record, deposited and kept in the public office of the clerk of the Chancery Court of said county as a record book and open for inspection to all persons, and exhibited the fact that there were 3,129 registered voters in said county at the time of the election."

The third plea was like the second, with the addition of the following :

"And said defendant avers that before the issuance of any of the bonds and coupons in the declaration mentioned, a bill was exhibited by citizens and tax-payers of said county against the said board of supervisors in the Chancery Court of the county of Carroll to restrain and enjoin said board of supervisors from the issuance and delivery of the bonds of said county upon a subscription of stock in said railroad company ; and thereupon an injunction was ordered and issued, before the issuance and delivery of any of the bonds and coupons mentioned in the declaration, restraining and enjoining the said board of supervisors from the issuance and delivery of such bonds. And said defendant avers that the said bill of injunction was sustained and made perpetual by the judgment and decree of the Supreme Court of the State of Mississippi. And said defendant says that, notwithstanding the issuance and pendency of said injunction, and notwithstanding the refusal of two-thirds of the qualified voters of said county to vote for said subscription for stock in said railroad company, the said board of supervisors fraudulently and illegally issued and delivered the bonds and coupons in the declaration mentioned in fact, for a subscription for stock in said railroad company. And this the said defendant is ready to verify. Wherefore it prays judgment."

A demurrer to each of these pleas was sustained, and judgment rendered for the plaintiff below, to reverse which this writ of error was prosecuted.

*Mr. J. Z. George* for plaintiffs in error submitted on his brief.
—The Supreme Court of Mississippi has held that the words
" qualified voters " in the. Constitution mean those who have
been determined by the registrars as having the requisite qual-
ification by enrolling their names, and that the words " two-
thirds " mean that number of the whole number whose names
have been.enrolled as legal voters. *Hawkins et al.* v. *Carroll
County*, 50 Miss. 735. This case settles the invalidity of the
bonds as between the original parties. The mere issuing of the
bonds does not estop the county from contesting their validity
even in the hands of a *bona fide* holder. *Pendleton County* v.
*Amy*, 13 Wall. 297; *Coloma* v. *Eaves*, 92 U. S. 484, 490; *Knox
County Commissioners* v. *Aspinwall*, 21 How. 539, 544. The
authority given by the legislature did not go into effect until
the assent of two-thirds of the voters of the county had been
obtained. Every purchaser of bonds was bound to know this,
and was put upon his inquiry. *McClure* v. *Oxford Township*,
94 U. S. 429; *County of Warren* v. *Marcy*, 97 U. S. 96, 104.
Nothing short of a distinct statement on the face of the bonds,
that the precedent condition had been complied with, ought to
estop the county. It is the rule that estoppels must be certain
to every intent. Bigelow on Estoppel, 304. The issuance of
the bonds pending an injunction, and in violation of it, was an
illegal act from which no legal right can flow. *Williams* v.
*Cammack*, 27 Mississippi, 209. The protection thrown around
the holder of commercial paper, ceases when it is shown that
it had its inception in illegality or fraud. The holder must
then show that he is a holder *bona fide* and for a valuable con-
sideration. 1 Smith Leading Cases, note to *Miller* v. *Race*,
250; *Smith* v. *Sac County*, 11 Wall. 139, 147; *Commissioners*
v. *Clark*, 94 U. S. 278, 285; *Stewart* v. *Lansing*, 104 U. S.
505, 509; *Buchanan* v. *Litchfield*, 102 U. S. 278.

*Mr. Charles B. Howry* for defendant in error.

Mr. Justice MATTHEWS delivered the opinion of the court.
He stated the facts in the foregoing language, and continued:
The provision in the charter of the railroad company

authorizing the issue of bonds in payment of subscriptions by municipal bodies to its capital stock, is based upon article 12, section 14, of the Constitution of the State, which declares that—

"The legislature shall not authorize any county, city or town to become a stockholder in, or to lend its credit to, any company, association or corporation, unless two-thirds of the qualified voters of such county, city or town, at a special election or regular election to be held therein, shall assent thereto."

It is claimed, on behalf of the plaintiff in error, that the qualified voters referred to in the Constitution of Mississippi and the charter of the railroad company, are those who have been determined by the registrars to have the requisite qualifications of electors, and who have been enrolled by them as such, and that it requires a vote of two-thirds of the whole number enrolled as qualified to vote, and not merely two-thirds of such actually voting at an election for that purpose, to authorize the issue of such bonds as those in suit.

That presents the single question for our decision, for the averment in the last plea, that "the board of supervisors fraudulently and illegally issued and delivered the bonds and coupons," has reference merely to their being issued without the alleged requisite assent of two-thirds of the registered voters, and there is nothing alleged in the plea from which it can be inferred that the injunction bill, pending which the bonds, it is charged, were issued and delivered, was based on any other infirmity.

We do not think the plaintiff in error is precluded from raising this question by any recitals in the bonds. They contain no statement of any election called or held, or of the vote by which the issue of the bonds was authorized. They do not embody even a general statement that the bonds were issued in pursuance of the statutes referred to. The utmost effect that can be given to them is, that of a statement, that a subscription to the capital stock of the railroad company was authorized by the statutes mentioned, and that the sum mentioned in the bonds was part of it. They serve simply to point out the particular laws under which the transaction may law-

fully have taken place. They say nothing whatever as to any compliance with the requirements of the statute in respect to which the board of supervisors were authorized and appointed to determine and certify. They do not, therefore, within the rule of decision acted on by this court, constitute an estoppel, which prevents inquiry into the alleged invalidity of the bonds. *Northern Bank of Toledo* v. *Porter Township,* 110 U. S. 608; *Dixon County* v. *Field, ante,* 83; *School District* v. *Stone,* 106 U. S. 183.

On the other hand, we do not agree with the counsel for the plaintiff in error, that the pendency of the injunction bill, referred to in the last plea, affects the title of the defendant in error, as a *bona fide* holder of the bonds for value; or that this court is bound to follow and apply the judgment of the Supreme Court of Mississippi, in that case, reported as *Hawkins* v. *Carroll County,* 50 Miss. 735, perpetuating the injunction, on the ground that the Constitution and laws of the State required a majority of two-thirds of those qualified to vote to be cast at the election, to support the validity of the bonds.

The defendant in error was no party to that suit, and the record of the judgment is therefore no estoppel. The bonds were negotiable, and there was, therefore, no constructive notice of any fraud or illegality, by virtue of the doctrine of *lis pendens. County of Warren* v. *Marcy,* 97 U. S. 96. It is not alleged in the plea that the defendant in error had actual notice of the litigation, or of the grounds on which it proceeded, or that any injunction was served upon the board of supervisors; and, if he had, that notice would have been merely of the question of law, of which, as we have seen, he is bound to take notice, at all events, and which is now for adjudication in this case. There is nothing in the case of *Williams* v. *Cammack,* 27 Miss. 209, 224, to which we are referred by counsel on this point, inconsistent with these views.

The decision in *Hawkins* v. *Carroll County,* above referred to, is not a judgment of the Supreme Court of Mississippi, construing the Constitution and laws of the State, which, without regard to our own opinion upon the question involved, we feel bound to adopt and apply in the present case. It is a de-

cision upon the very bonds here in suit, pronounced after the controversy arose, and between other parties. It was not a rule previously established, so as to have become recognized as settled law, and which, of course, all parties to transactions afterwards entered into would be presumed to know and to conform to. When, therefore, it is presented for application by the courts of the United States, in a litigation growing out of the same facts, of which they have jurisdiction by reason of the citizenship of the parties, the plaintiff has a right, under the Constitution of the United States, to the independent judgment of those courts, to determine for themselves what is the law of the State, by which his rights are fixed and governed. It was to that very end that the Constitution granted to citizens of one State, suing in another, the choice of resorting to a federal tribunal. *Burgess* v. *Seligman*, 107 U. S. 20, 33.

We have, however, considered the reasoning of the Supreme Court of Mississippi, in its opinion in the case of *Hawkins* v. *Carroll County*, with the respect which is due to the highest judicial tribunal of a State speaking upon a topic as to which it is presumed to have peculiar fitness for correct decision, and, while we are bound to admit the carefulness and fulness of its examination of the question, we are not able to adopt its conclusions. On the contrary, we are constrained to follow the decision in *St. Joseph Township* v. *Rogers*, 16 Wall. 644, and adhere to the views expressed by this court in *County of Cass* v. *Johnston*, 95 U. S. 360, in deciding the same question upon the construction of a provision of the Constitution of Missouri, which is identical with that of the Constitution of Mississippi under consideration. It was there declared and decided, that "all qualified voters, who absent themselves from an election duly called, are presumed to assent to the expressed will of the majority of those voting, unless the law providing for the election otherwise declares. Any other rule would be productive of the greatest inconvenience, and ought not to be adopted, unless the legislative will to that effect is clearly expressed," page 369. In Missouri, as in Mississippi, there was

a constitutional provision requiring a registration of all qualified voters. *State* v. *Sutterfield*, 54 Missouri, 391.

Much stress in the argument was laid by the Supreme Court of Mississippi upon the registration record, as furnishing the standard by which to ascertain the proportion of qualified voters, whose assent was required by the Constitution. On this point, they say, 50 Miss. 761: "There exists, therefore, in each county a registration of the list of voters, which ought to show, with approximate accuracy, the names of those entitled to vote, 'at any election.' In ascertaining, therefore, the result of an election requiring two-thirds of the qualified voters of the county to assent thereto, we think that the registration books are competent evidence on the point of the number of qualified voters in the county. It would be open to proof to show deaths, removals, subsequently incurred disqualifications, &c. When the Constitution uses the term 'qualified electors,' it means those who have been determined by the registrars as having the requisite qualifications by enrolling their names, &c. It would be a fair construction of the 14th section to hold that the 'two-thirds' meant that number of the whole number whose names had been enrolled as legal voters. That furnished official evidence of those *prima facie* entitled to vote. But, in this case, in addition to the information contained in the registration books, it is admitted that there were from 2,000 to 2,500 qualified voters in Carroll County at the date of this election. The proposition submitted did not have the assent of two-thirds, as required by the Constitution. The difficulty of proving the number of voters in the county has been obviated by this admission."

But this reasoning, as it seems to us, does not meet, much less overcome, the difficulty of the argument. The Constitution of Mississippi, although it does not recognize any voters as qua"fied, except such as are registered, does not make all persons, registered as such, qualified. And yet, if it is to be construed, in the clause in question, as referring to the registration as conclusive of the number of qualified voters, then no proof is competent to purge the list of those who never were qualified, or have died, removed, or become otherwise disquali-

fied, thus obliterating the distinction between registered and qualified voters; and if, on the other hand, it is to be construed as meaning voters qualified, in fact and in law, without reference to the sole circumstance of registration, then the body of electors is as indefinite as though there were no registration, and the determination of the whole number, if an actual enumeration is required to determine how many are two-thirds thereof, is completely a matter *in pais*, and must be inquired of and ascertained, in each case, by witnesses. The difficulty, if not the impossibility, of reaching results by such methods, amounts almost to demonstration, that such could not have been the legislative intent, or the meaning of the Constitution. The number and qualification of voters at such an election, is determinable by its result, as canvassed, ascertained and declared by the officers appointed to that duty, or as subsequently corrected by a contest or scrutiny in a direct proceeding, authorized and instituted for that purpose; it cannot be contested in any collateral proceeding, either by inquiry as to the truth of the return, or by proof of votes not cast, to be counted as cast against the proposition, unless the law clearly so requires. In our opinion, the Constitution of Mississippi did not mean, in the clause under consideration, to introduce any new rule. The assent of two-thirds of the qualified voters of the county, at an election lawfully held for that purpose, to a proposed issue of municipal bonds, intended by that instrument, meant the vote of two-thirds of the qualified voters present and voting at such election in its favor, as determined by the official return of the result. The words " qualified voters," as used in the Constitution, must be taken to mean not those qualified and entitled to vote, but those qualified and actually voting. In that connection a voter is one who votes, not one who, although qualified to vote, does not vote.

We are consequently, of opinion, that there is no error in the judgment of the Circuit Court, and it is accordingly

*Affirmed.*