FOREST PRODUCTS CO. v. RUSSELL et al.

(Circuit Court, S. D. Mississippi. December 26, 1907.)

No. 732.

1. PUBLIC LANDS—MISSISSIPPI SCHOOL LANDS—STATUTORY RIGHTS OF LESSEE.
Under Miss. Act Feb. 27, 1833, authorizing the leasing by the state of sixteenth section school lands for a term of 99 years based on an appraisal, which statute contained no provision against waste, a lessee acquired as full and complete ownership of the land as though his title was in fee subject only to termination at the end of the term, and where the value of the land was in the timber he has the right to cut and sell the same with all rights of action with respect thereto as a fee-simple owner.

2. COURTS—FEDERAL COURTS—FOLLOWING STATE DECISIONS.
Federal courts, in determining the rights of parties acquired under a state statute prior to the date of a change of opinion by the Supreme Court of the state as to its construction, will exercise its own independent judgment, and are not bound to follow the latest decision of the state court.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 951.

Conclusiveness of judgment between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank v. City of Memphis, 49 C. C. A. 468.]

In Equity. On exceptions to answer.

Green & Green, for complainant.

R. P. Willing, for defendants.

NILES, District Judge. This cause is before this court without a reference to a master on complainant's exceptions to the answer, and which, in substance, covers all the matters of defense set up, on the ground, in effect, that they constitute no defense, and that they were adjudged adversely to the defendants by the decree overruling the demurrer to the original bill. These exceptions have been argued as if upon rehearing of the demurrer. In view of the questions involved, and the difference in opinion between this court and the latest decision of the state Supreme Court, the argument and consideration have taken a wider range than the record would ordinarily justify. This court held upon the demurrer in this cause that the demurrer should be overruled.

"The lessee of sixteenth section lands in the state of Mississippi has as full and complete ownership as if the title was in fee," in the language of Judge Truly, "subject only to the condition that the holding was to terminate at a specific date; in other words, the lease was intended to operate as a fee determinable at the end of ninety-nine years at common law, and action for waste lay only against tenants by courtesy, tenants in dower, and guardians whose estate was created by act of law; but tenants for life, or years, had an interest in the land by the act of the lessor, who might and ought to have provided against waste by some express covenant or condition, and such tenants were not liable at common law, either for voluntary or permissive waste, on the assumption that if it was to be it would have been so expressed in the lease."

To adopt the language of Mr. Justice Calhoun:

"We have no statute of waste, and our common law is what this court may declare it; and why should not our judgment be with the early judges of England—that a tenant for ninety-nine years shall not be liable for waste, because

if it were intended he should be it would have been so declared in the statute providing for such a lease."

Upon this hearing there have been reargued and reconsidered these questions: First. The estate of the lessee, under a conveyance of a sixteenth section of school lands made in pursuance of an act of the Legislature of the state of Mississippi approved Feb. 27, 1833, entitled an "act to authorize the trustees of the school lands within each township in this state to lease the sixteenth section lands within the same for ninety-nine years, and for other purposes." Second. Whether this court, as a federal court, is bound to follow the opinion of a majority of the Supreme Court of Mississippi in Moss Point Lumber Company v. The Board of Supervisors of Harrison County, 42 South. 296; or whether, in this class of cases, upon the facts in the record of these particular cases, this court may and should follow its independent judgment.

In the determination of the questions involved it is not material as to whether the title of these lands came from the national government or from the state of Georgia. The real question is, what title did the lessees of these lands derive from the state of Mississippi under the act of 1833 authorizing the leasing of the same? The lease of the Moss Point Lumber Company was under the Code of 1880 and not under the act of 1833. Before the act of 1833, there were a number of acts of the Legislature authorizing the leasing of these sixteenth section lands for a short period of time, providing in each act against waste. Under former acts of the Legislature, for some reason or other, the lands were not leased to any great extent. They were generally regarded as worthless and unfit for agricultural purposes. But under the act of 1833, which authorized the conveying of the "right, title, use, interest, and occupation" of said lands for a period of 99 years, parties began to lease these lands, believing that they had a right, under the terms of the act, to use the timber on such lands as if they had a title in fee; the act of 1833 not providing against waste, but repealing all acts or parts of acts contravening the provisions of said acts.

Section 8 of said act of 1833 provides as follows:

"That all acts and parts of acts, contravening the provisions of this act be and the same are hereby repealed."

This act was approved February 27, 1833; and from that date for a long number of years the general opinion was that lessees of these lands had conveyed to them, upon compliance with the terms of said act, absolute ownership for the period of 99 years. Where parties without authority cut timber from lands leased under the act of 1833 the lessee of such lands could replevy the timber or recover the value of the same, the legal title to the timber being in the lessee of the land. See acts of Mississippi Legislature, 1841, p. 127, c. 25. To use the language of Judge J. A. P. Campbell:

"Here the statute (1880) contained the terms of the lease. By it the land was to be appraised, and the land was to be leased for ninety-nine years. No

distinction is made between the term and the fee, but the right of the best bidder was that of the lessee for ninety-nine years. It must be that he acquired the right to make such use of it, and all constituting part of it, as it was capable of, adapted to, and suitable for. He could make use of it surely as was the customary and approved use of like lands in the region in which it lay. He could not sell it, except for his unexpired term. He would have no right to destroy it if he could; but he has the right to occupy it and use it and make profit of it by devoting it to the purposes to which such lands were devoted by the custom of the country, and for which alone it was suitable. If it was suitable for agriculture, he could convert it into a plantation; if it was a lake, valuable for water and fish, etc., he could make use of it, but would have no right to destroy it by draining or otherwise. If it was fit only for the trees growing on it, he had the right to fell and dispose of them for his own profit, if that was the customary use made of it, for which alone it was suitable. He got that or nothing if that was all the land was adapted to. Such must have been the understanding of the lawmakers and of all the actors in the making of the lease. It is not for the courts to undertake to correct what they may now think was improvident legislation a quarter of a century ago."

When these leases were authorized to be made—more than 73 years ago—a large part of these lands in the southern part of the state were almost valueless and the pine lands of South Mississippi were so considered by many. And, as Judge J. A. P. Campbell further says, "There were many thousands of acres of land held by the United States and offered for sale at $1.25 per acre." He also adds:

"It cannot be doubted that the universal popular understanding was that the lessee got the right to appropriate all the timber during his lease. The only factors of value were the trees. It is important to remember that this is not the case of arable lands, but of those whose value consisted in the pine trees. It certainly was intended by the law and by all the actors that the lessee should get the right to use the land for his own profit, according to its nature and capability. If valuable only for timber, he must have the right to use the timber; and, if any, what limit can be placed on his right."

But after the building of lines of railroad through that section of the country, and increased population, the timber became valuable, and the land without the timber was of little value. As the years passed away, these lands were assessed for their intrinsic value, and there was a uniform acquiescence by all parties for many years that the lessees were, to all intent and purposes, the owners of these lands for the time, because, under the act of 1833, it was the duty of the lessor, upon the lessee complying with the terms of the act, to convey the right, title, use, interest, and occupation of said lands. The act of the Mississippi Legislature before the act of 1833 provided against waste; but, in the act of 1833, they not only increased the duration of the lease, but omitted or neglected to place a provision in said act against waste as the Legislature had seen fit to do in former acts, and in doing this, in my opinion, it was clearly the intention of the Legislature to vest in the purchaser of the sixteenth section school lands as full and complete ownership as if the title was in fee for the period of 99 years.

Now, is this court precluded from adhering to its opinion in the decree overruling the demurrer to the original bill by the last expression of the Supreme Court of this state in Moss Point Lumber Company v. Board of Supervisors? The opinion in this case was rendered

after a change in the personnel of that court. As antecedent rights accrued before the last decision in the Moss Point Lumber Company Case, this court should and will exercise its independent judgment, because it never, as to antecedent rights, surrendered those rights to conform to a decision of the state Supreme Court when this court had reached a different conclusion as to the law.

"Acting under the opinion thus deliberately given by this court, we can hardly be required by any comity or respect for the state court to surrender our judgment to decisions since made in the state, and declare contracts to be void which, upon full consideration, we have pronounced to be valid. Undoubtedly, this court will always feel itself bound to respect the decisions of the state courts, and from the time they are made will regard these as conclusive in all cases upon the construction of their own Constitution and laws. But we ought not to give them a retroactive effect, and allow them to render invalid contracts entered into with citizens of other states, which, in the judgment of this court, were lawfully made." Groves v. Slaughter, 15 Pet. 449, 10 L. Ed. 800; Carroll County v. Smith, 111 U. S. 562, 28 L. Ed. 517.

In Southern Pine Co. v. Hall, 105 Fed. 85, 44 C. C. A. 363, the following language is used by the court:

"A federal court will exercise an independent judgment as to the construction of a state statute in a case involving rights acquired thereunder before it had received a construction by the state courts, notwithstanding it has since been construed by such courts."

In Hoffman v. Quincy, 4 Wall. 535, 18 L. Ed. 403, Mr. Justice Swain said:

"It is also settled that the laws which subsisted at the time and place of making a contract, and where it is to be performed, enter into and form a part of it as if they were expressly referred to or incorporated in its terms."

I think the rule is uniform that a federal court, in interpreting the rights of parties under transactions made prior to the date of the change of opinion of the Supreme Court of the state, will exercise its own independent judgment, and follow its own decisions made prior to such change. Rowan v. Runnels, 5 How. 134, 12 L. Ed. 85; Carroll County v. Smith, 111 U. S. 562, 4 Sup. Ct. 539, 28 L. Ed. 517.

In Bartholomew v. Austin, 85 Fed. 359, 29 C. C. A. 568 (Circuit Court of Appeals, Fifth Circuit), Judge Pardee said:

"When contracts or transactions have been entered into, and rights have accrued thereunder, before the state laws applicable to them have been construed by the state courts, the federal courts will place their own interpretation on such laws, though the state courts have since adopted a different construction."

Burgess v. Seligman, 107 U. S. 20, 2 Sup. Ct. 10, 27 L. Ed. 359, holds:

"When contracts and transactions have been entered into, and rights have accrued thereon, under a particular state of the decisions, or when there has been no decision, of the state tribunals, the federal courts properly claim the right to adopt their own interpretation of the law applicable to the case, although a different interpretation may be adopted by the state courts after such rights have accrued." See Great Southern Fireproof Hotel Company v. Jones, 193 U. S. 532, 24 Sup. Ct. 576, 48 L. Ed. 778.

And Chief Justice Taney, in Ohio Life Insurance & Trust Co. v. Debolt, 16 How. 432, 14 L. Ed. 997, says:

"Indeed, the duty imposed upon this court to enforce contracts honestly and legally made would be vain and nugatory if we were bound to follow these changes in judicial decisions which lapse of time and change in judicial offices will often produce. The writ of error to a state court would be no protection to a contract if we were bound to follow the judgment which the state court had given, and which the writ of error brings up for the revision here." Citing cases. "These cases thoroughly establish the proposition that in no way can obligation of the federal courts, under the Constitution, be discharged, than by rigidly adhering to the right and duty to maintain the ultimate right of the federal courts to protect the citizens of the United States, and of every state in which enjoyment of rights and privileges are guaranteed by the federal Constitution." See Westinghouse Air Brake Co. v. Kansas City Southern Ry. Co., 137 Fed. 34, 71 C. C. A. 1.

When these contracts were made granting these estates, there was no suggestion that there was any limitation upon the right of enjoyment of the premises. The United States government was selling the lands adjacent to these lands, fully timbered, at a $1.25 per acre, and conveying an estate in fee simple. The prices paid by the lessee for these sixteenth section lands exceed in value, in many instances, the price paid the government. The lessee of these lands was taxed upon the intrinsic value of the land, and not upon any term in the land; and the causes of action of a fee-simple owner were conferred upon the lessee except as against the lessor. "With the causes of action of a fee-simple owner and the payment of the taxes upon the intrinsic value of the land, I cannot doubt that such a grantee, under such a contract, should have the right to use the timber on the land, and for whatsoever purposes he sees fit, and without accountability therefore during the period of the lease."

I therefore conclude that the exceptions to the answer should be sustained.