## FUNK & WAGNALLS CO. v. AMERICAN BOOK CO.

Circuit Court of Appeals, Second Circuit. April 4, 1927.

No. 295.

1. Schools and school districts ⬤➾167—Kentucky text-book commission held not authorized to adopt supplemental books, and publisher of dictionary, not adopted as supplemental book, held entitled to sell it by any fair means (Ky. St. §§ 4421a1 et seq., 4363, 4377, 4383).

Under Ky. St. §§ 4421a1 et seq., 4363, 4377, 4383, the Kentucky state text-book commission has no right to prescribe supplemental books to be used with basal books which it is authorized to adopt, and hence publisher of dictionary not named by commission as one of supplemental books was entitled to sell its dictionary to the public or schools of Kentucky by any fair means, but not entitled to circulate through county superintendents list of basal books in such form as to indicate that its dictionary was an approved supplemental book.

2. Courts ⬤➾365(1)—Judgment of state court in suit begun after suit in federal court does not control federal court.

Judgment of state court in suit begun after institution of suit in federal court is not controlling on federal courts.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by the Funk & Wagnalls Company against the American Book Company for an injunction restraining unfair competition. Decree for complainant (16 F.[2d] 137), and defendant appeals. Decree modified.

Leonard D. Baldwin, of New York City (Martin Conboy and Henry T. Hall, both of New York City, of counsel), for appellant.

William Beverly Winslow, of New York City (Charles E. Hughes, Charles E. Hughes, Jr., and John Fletcher Caskey, all of New York City, of counsel), for appellee.

Before MANTON, HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge. [1] Both parties to this suit publish dictionaries—appellee its Comprehensive Standard Dictionary and Funk & Wagnalls' Standard Dictionary; the appellant, Webster's. Appellee entered into a contract with the state text-book commission of Kentucky to furnish, among other books, dictionaries published by it for exclusive use in the schools of Kentucky for a period of five years from July 15, 1924. Appellee claims that its dictionary has been officially adopted as one of the text-books in the uniform series of text-books adopted pursuant to the common school laws of Kentucky. This suit seeks to enjoin the appellant from acts of unfair competition in interfering with this contract and in offering for sale its dictionary and from printing, circulating, and distributing book lists either to or through the county superintendents of the state or any other persons or firms, or from conniving or conspiring with the county superintendents of the state for the purpose of having the superintendents recommend the purchase of appellant's dictionary in lieu of the appellee's, or from inducing or attempting to induce any person, firm, or corporation to disregard or break or impair the contract which the appellee has with the state text-book commission. The claim is that the appellant, by descriptive lists which it prepared and distributed, forestalled and destroyed the sale of appellee's dictionary and its consequent profits. The appellant challenges the power of the state text-book commission to adopt a dictionary as a text-book under the Kentucky Statutes, and therefore the right of the appellee to the exclusive sale of its publications in the schools. The appellant furnished to county superintendents of schools its list of books containing recommendations by such superintendents of appellant's dictionary rather than appellee's. The county superintendents in turn circulat-

ed these lists. A typical circular, distributed under the heading of the particular county, stated, "Book List for the Elementary Schools, 1924–25," and under the grades from the first up to the eighth were listed text-books for the elementary subjects referred to in the statute which were required to be taught, namely, English grammar, reading, writing, drawing, arithmetic, and spelling, and on such lists as supplemental reading placed Webster's Elementary School Dictionary in black type and at the bottom thereof there was printed: "This is the official book list for the county schools. I recommend Webster's Elementary School Dictionary and the supplementary books included above"—signed County Superintendent. Another type of form used was headed, "Book List—Harlan County—1925–26. Basal Books adopted by State Text-Book Commission"—and then followed the text-books for the various grades and as supplemental, "Webster's Elementary School Dictionary" and below "Supplemental books, listed in black face type, recommended by A. C. Jones, County Superintendent."

The Kentucky Statutes provide for a uniform school system and course of instruction (section 4363, Ky. Stat.) and for a board of education consisting of a superintendent of public instruction, the secretary of state, and the Attorney General (section 4377). By section 4383 it is mandatorily provided that instructions by the board embraced spelling, reading, writing, arithmetic, English grammar, English composition, geography, physiology and hygiene, civil government, United States history, and the history of Kentucky. The state text-book commission is required to select a uniform series of text-books to be used in connection with the course of study provided by the board of education. Under the Act of March 29, 1918, known as section 4421a1 et seq. of the Kentucky Statutes, section 4421a7 provides that it shall be the duty of the commission to adopt from the authorized state list of books submitted a uniform series or system of text-books for use in the common schools and high schools of the state except cities of the first, second, third, and fourth classes. Section 4421a9 provides the commission, in the selection and adoption of the text-books for the state, shall consider the merits of the book, taking into consideration the subject-matter, printing, binding, material, and mechanical qualities and their general suitability and desirability for the purposes intended. Section 4421a10 requires that the uniform series of text-books to be selected by the commission shall include all branches

required or that may hereafter be required by law to be taught in the common elementary or high schools of the state. And section 4421a16 provides that the board of education shall print a complete list of the books adopted under the provisions of the act stating. the net contract price, the exchange and retail price of each, and to distribute such lists to the county superintendents in such quantity as they may request, and it then is the duty of the county superintendents of each county to furnish such lists to dealers and the principal teachers of all schools in the county, and such dealers and teachers shall post. the same conspicuously in their salesrooms or schoolhouses. Failure so to do subjects them to criminal punishment. Section 4421a17 provides that the books adopted by the commission, as the uniform system of text-books for the state, shall be introduced and used for text-books to the exclusion of all others in the common schools and high schools of the state except as therein provided, for a period of five years from the date of adoption, and it shall not be lawful for any teacher or other school officer to use, or for any board of education to permit to be used, any books upon the same branches other than those adopted by the commission, and "However, nothing herein shall prevent the use of supplementary text-books, but such .supplementary books shall not be used to the exclusion of the books prescribed under the provisions of this act." A violation of this statute is also a subject for criminal punishment.

The state text-book commission advertised for bids and received them from both the appellant and appellee upon uniform blanks ·furnished by the commission. The appellee filed its bid for the adoption of its Standard Dictionary. On April 23, 1924, the state text-book commission met and adopted the appellee's dictionary as a supplemental grade text-book. The contract between the state text-book commission and the appellee was thereafter entered into and included appellee's Comprehensive Standard Dictionary as a supplemental text grade, and its Text Desk Dictionary as a supplemental text high school. Thereafter the state board of education, in accordance with section 4421a16 of the act, compiled, printed, and distributed a complete list of all the books adopted. The appellant contends that the state text-book commission had no right to adopt a dictionary for exclusive use in the schools, for a dictionary, in the nature of its use, is not a text-book but a reference book, and the power of. the state text-book commission was con-fined to text-books and to a uniform series of text-books upon subjects prescribed by statute. And it argues, that it could adopt but one text-book for each subject, and its power was exceeded in adopting the books shown on their list as "basal." Further, it says that the supplementary books may be used in schools as books of reference, and that its dictionary is such a supplementary book and might be sold by the appellant and used by the county superintendents, despite any recommendation or adoption by the state text-book commission of the appellee's dictionary. It is established that the appellant provided for and sent to the various county superintendents the lists in the form and text referred to above and such lists were distributed by the county superintendents to the county schools in the various counties. Lists were also furnished as guides for the purchase of books for the book sellers.

The Century Dictionary defines "supplemental" as "of the nature of a supplement; serving to supplement; additional; added to supply what is wanted"; and "supplementary" as "same as supplemental." We think that, under the statutes of Kentucky referred to, the dictionaries were not intended to be a text-book but rather a reference book which may be used for supplemental or supplementary use. The state text-book commission was directed to adopt a uniform series of text-books, which should include all branches required as necessary study for school children in elementary grades other than the cities referred to. Supplementary text-books might freely be used; the Legislature did not forbid it. They were subject to recommendation only. It is, of course, possible that children in the schools wished their own dictionaries to supplement their text-books, and recommendations as to dictionaries are valuable. This was one of the purposes of section 4421a17, Ky. Stat. The statute is plain as to the studies, as it is the mandatory direction to select the text-books. But the superintendent, teacher, and parent each has a voice in the supplementary books that might be used. Undoubtedly, the Legislature intended that there should be uniformity throughout the county schools as to text-books. The same reasoning does not apply in the use of a dictionary. The courts of Kentucky have held that the commission is not to fix subjects but to choose text-books on specified subjects. State Text-Book Comm. v. Weathers, 184 Ky. 748, 213 S. W. 207. It is apparent that the statute contemplates the adoption by the commission of the books

.specified and no others. And it is provided that it was not to be understood as in any wise forbidding or restraining the use of such other books in schools as the judgment of either their teachers or parents might suggest. To name other books or adopt them as supplemental was merely a matter of recommendation which the state text-book commission had the right to do, but they are not text-books for the subjects enumerated in the statute to be taught in school. Their recommendations might be of value, but there is no authority to make an adoption of books beyond the power granted. Since the subjects required by law to be taught are clearly designated, the adoption of other books lacks the force of lawful requirement. The requirement of the basal or statutory adoption of books is entirely different. If a supplemental or supplementary list had the same force, it would exclude other books, and this would be in direct contradiction to the proviso of the statute which permits recommendation of supplementary books. Sections 4421a17, 4421b20.

[2] In a suit seeking a declaratory judgment as to the interpretation and meaning of these statutes, the Court of Appeals of Kentucky in Mills v. Schoberg, 216 Ky. 223, 287 S. W. 729, held, adopting the opinion of the lower court, that the state text-book commission could not adopt a dictionary as a text-book under the provisions of these statutes, which required certain text-books to be adopted as "basal" books for subjects referred to and here considered. While this suit was instituted subsequent to the present suit in the District Court for the Southern District of New York and is not controlling upon us (Hines Yellow Pine Trustees v. Martin, 268 U. S. 458, 45 S. Ct. 543, 69 L. Ed. 1050; Kuhn v. Fairmont Coal Co., 215 U. S. 349, 30 S. Ct. 140, 54 L. Ed. 228; Carroll County v. Smith, 111 U. S. 556, 4 S. Ct. 539, 28 L. Ed. 517), we find the court's construction of the statutes here brought into question consistent with our own views.

The Act of March 26, 1926, effective June 15, 1926 (section 4421a of the Kentucky Statutes), providing a book list for the elementary schools, which is the official book list for county schools, contains a provision preserving the rights which the appellee may have by virtue of its contract. Section 4421a17. It is argued, however, that it affects section 4421a17 of the 1918 act, in that a clause of the latter provides: "However, nothing herein shall prevent the use of supplementary text-books, but such supplementary books shall not be used to the exclusion of the books prescribed under the provisions of this act." This applies only to books not adopted by the commission. It does not in the least extend the field of the commission's adoptive powers, and the commission could not impose restrictions upon the use of supplementary books by making the ownership of its own supplemental books a prerequisite to the use of supplementary ones. As we have held, the commission's power does not extend beyond the adoption of "basal" books. The 1926 statute limits the adoptive power of the commission to "basal" books, differentiating clearly between recommended books which the commission may not adopt, and the "basal" text to which its adoptive powers are limited. Section 4421a7, Act of 1926. Indeed, the 1926 act, if it be at all material to voice the Legislature's intent as to the 1918 act, would clearly define the will of the people as forbidding books by adoption for exclusive use beyond the text-books for the subjects enumerated in the statute of 1918.

The lists which are printed and circulated, types of which are Exhibits C and D, in the form used, were calculated to and did deceive. The appellant was not justified in representing that the state text-book commission had recommended its own book as among the supplementary books, even though the commission's power did not extend that far. The lists thus sent out were misrepresentations. Exhibit C contained among the nonsupplemental books none except those contained in the official list, and were described as "basal." It did not contain the supplemental books of the official list. It stated that the county superintendent recommended the dictionary; and this, together with the character of the list, the way it was made out, and the manner in which it was circulated, was an unfair method of competition. While there was no literal misstatement, the implication was false. Exhibit D is also misleading. The word "basal" at the beginning is limited to so much as is not put under the head "Supplemental." When either Exhibit C or D are distributed under the name of the county superintendent, it may not be doubted that the representation is there made that it had an official indorsement. Such lists as Exhibits C and D sent out by the appellant, who was an unsuccessful bidder for the supply of text-books under the statute, when distributed in the form referred to and through the medium of county superintendents, was an unfair method of competition.

The injunction below will be affirmed, re-

straining and enjoining the appellant from preparing, printing, circulating, and distributing by any means, through the county superintendents of schools or by any other means, book lists of the type of Exhibits C and D which are the exhibits attached to the complaint, but it is reversed as to that part of the injunction which restrains the appellant from selling its dictionaries to the public or the schools of Kentucky by any other fair methods.

Decree modified accordingly.