## HOWARD et al. v. CITY OF SEWARD et al.
### No. S-4887.

District Court of Alaska. Third Division. Anchorage.
March 16, 1948.

Davis & Renfrew, of Anchorage, Alaska, for plaintiffs.

McCutcheon & Nesbett, of Anchorage, Alaska, for defendants.

DIMOND, District Judge.

The plaintiff has applied for an injunction pendente lite to prevent the defendant from issuing and selling the revenue bonds of the city and from using the funds thus obtained in payment of the purchase price of property, including a wharf and marine ways desired for public use, situated in the City of Seward, owned by the United States Govern-

ment and offered for sale by the War Assets Administration as surplus military property.

The law provides that such revenue bonds are not of general obligation and that the same with interest may be paid only from the unpledged revenues of the public works for which such bonds are issued.

The sale of its revenue bonds and the purchase of said property by the city are undertaken under authority of the Act of Congress of March 6, 1946, 60 Stat. 33, Title 48 U.S.C.A., § 44f et seq., and an election called by the Mayor and Common Council of the City, pursuant to the provisions of the Act, and held on December 29, 1947, wherein the proposal to issue the bonds and purchase the property was approved by a vote of 209 in favor of the proposal to 165 against it.

While the affidavits cover a wide range of alleged illegal acts of the Common Council and Mayor in the enactment of the Ordinance, No. 178, for the election mentioned, and in other ways, the plaintiff's complaint rests upon the asserted insufficiency of the vote authorizing the issuance of the bonds and the purchase of the property.

The Law, Title 48 U.S.C.A. § 44f, provides that the bonds may be issued "upon majority vote of the qualified voters in such municipal corporation * * * ". The plaintiff has submitted affidavits indicating that on the date of the election 883 "qualified electors" resided in the city, and, therefore, asserting that the authorizing ordinance was not adopted by a "majority vote of the qualified voters in" the city.

The intent of Congress in the use of the words quoted is now the question for decision. Counsel for plaintiff urges that the language used is so plain to preclude construction; that Congress must be presumed to mean what is so plainly stated; and has invited attention to opinions and decisions from a number of State courts so holding under similar statutory or constitutional language. Counsel for defend-

ants relies upon the reasoning and authority of the Supreme Court in decisions given in analogous cases.

Both of counsel invite attention to Section 2 of the Act of May 28, 1936, 49 Stat. 1388, as amended by the Act of June 14, 1937, 50 Stat. 258, Title 48 U.S.C.A. § 44b, authorizing issuance of general obligation bonds by cities of Alaska. An examination of this legislation reveals that as originally enacted on May 28, 1936, the law provided that the bonded indebtedness of the cities of Alaska, therein authorized, "be first submitted to and approved by not less than 65 per centum of the qualified electors of such municipal corporation whose names appear on the last tax assessment roll or record of such municipality for purposes of municipal taxation;" and that on June 14, 1939, it was amended to provide that such bonded indebtedness "be first submitted to the qualified electors of such municipal corporation whose names appear on the last tax-assessment roll or record of such municipality for purposes of municipal taxation, at an election called for such purpose, and not less than 65 per centum of the votes cast at such election shall be in favor thereof."

Light is thrown upon the purpose and intent of Congress in adopting the amendment of 1937 by the House committee report on the bill which became the law, House Report No. 806, 75th Congress, from which the following is quoted:

"The Committee on the Territories, to whom was referred the bill (H.R. 1502) to amend Public Law No. 626, Seventy-fourth Congress, having considered the same, report favorably thereon and recommend that the bill do pass.

"Public Law No. 626, Seventy-fourth Congress, authorizes municipal corporations in the Territory of Alaska to incur bonded indebtedness in order to obtain funds with which to undertake the construction of public works of a permanent character (49 Stat. 1388).

"It is now evident that in drafting the law an inadvertent error was made in providing the procedure for approval of

any proposed bond issue by the taxpayers of an Alaskan city. Provision was made that the proposed bond issue must be first submitted to and approved by not less than 65 percent of the qualified electors of the city whose names appeared on the last assessment roll or record, instead of 65 percent of the qualified electors who might vote on the question as was evidently intended.

"Prior to the enactment of Public Law 626, Seventy-fourth Congress, if any municipal corporation of the Territory desired to incur bonded indebtedness it was first necessary to secure the passage of a special act of Congress granting the necessary authority. In past years Congress has enacted a number of such special acts, and in each of such laws Congress has required the approval of a majority or some other proportion, but never more than 65 percent, of the voters at an election held to pass upon the proposed bond issue, the voting being limited to the listed or enrolled taxpayers of the city. The majority or other percentage or proportion of the taxpaying voters required to authorize the bond issue was always confined to those who should vote on the question, and not to the entire body of the taxpayers who were eligible to vote. The following quoted provision embraced in Public Law No. 79, Seventy-fourth Congress, is an example of the language used in such acts: "* * * said bonds shall be issued for the purpose herein authorized only upon condition that not less than a majority of the votes cast at such election in said municipality shall be in favor of the issuance of said bonds for such purpose." [49 Stat. 303, § 2].

"Such an unbroken course of legislation is convincing evidence that, in the enactment of Public Law, 626, Congress did not intend to require the virtually impossible condition that 65 percent of all of the qualified electors of the city whose names appeared on the last assessment roll or record must first approve a proposed bond issue.

"The bill was submitted to the Department of the Interior for the customary report and that report, which favors the enactment of the bill, is as follows:  *  *  * "

The state decisions on the subject are in irreconcilable conflict as indicated in the annotation commencing at page 1408 of 131 A.L.R., and the text and cases cited in 2 McQuillan on Municipal Corporations, P. 41. But whatever doubt might otherwise be entertained is resolved by the controlling authority of the Supreme Court of the United States expressed in Carroll County v. Smith, 1884, 111 U.S. 556, 4 S.Ct. 539, 28 L.Ed. 517, construing a provision of the Constitution of the State of Mississippi which declared that: "The legislature shall not authorize any county, city, or town to become a stockholder in, or to lend its credit to, any company, association, or corporation, unless two-thirds of the qualified voters of such county, city or town, at a special election, or regular election, to be held therein, shall assent thereto." Const.Miss.1868, art. 12, § 14.

The following excerpt from the opinion, 111 N.S. at pages 563 and 565, 4 S.Ct. at pages 543 and 544, 28 L.Ed. 517, are sufficient to indicate the court's ruling and the sustaining reasons:

" * * * we are constrained to follow the decision in St. Joseph Township v. Rogers, 16 Wall. [644] 664, [21 L.Ed. 328], and adhere to the views expressed by this court in County of Cass v. Johnston, 95 U.S. 360 [24 L.Ed. 416], in deciding the same question upon the construction of a provision of the constitution of Missouri which is identical with that of the constitution of Mississippi under consideration. It was there declared and decided that 'all qualified voters, who absent themselves from an election duly called, are presumed to assent to the expressed will of the majority of those voting, unless the law providing for the election otherwise declares. Any other rule would be productive of the greatest inconvenience, and ought not to be adopted, unless the legislative will to that effect is clearly expressed.' [95 U.S. at page 369, 24 L.Ed. 416].

   *    *    *    *    *    *    *    *

"The words 'qualified voters,' as used in the constitution, must be taken to mean not those qualified and entitled

to vote, but those qualified and actually voting. In that connection a voter is one who votes, not one who, although qualified to vote, does not vote."

In all of its legislation authorizing the issuance of general obligation bonds by the municipal corporations of Alaska upon the approval of the qualified electors, Congress has frequently, if not uniformly, confined the voting to electors who were also taxpayers and enrolled as such. With the impermanent exception below noted, Congress has uniformly provided for such approval by majority or other percentage of the electors voting: Act of April 25, 1934, 48 Stat. 609, for Juneau, Alaska; Act of April 25, 1934, 48 Stat. 611, for Skagway, Alaska; Act of April 25, 1934, 48 Stat. 612, for Wrangell, Alaska; Act of June 18, 1934, 48 Stat. 1004, for Douglas City, Alaska; Act of May 28, 1935, 49 Stat. 301 for Petersburg, Alaska; Act of May 28, 1935, 49 Stat. 303 for Valdez, Alaska; Act of August 3, 1935, 49 Stat. 514 for Anchorage, Alaska; Act of August 21, 1935, 49 Stat. 672, for Cordova, Alaska; Act of May 24, 1935, 49 Stat. 289, for Nome, Alaska; Act of May 31, 1938, 52 Stat. 589, 48 U.S.C.A. §§ 315–315d, for Public Utility Districts in Alaska; Act of August 9, 1940, 54 Stat. 782, for Sitka, Alaska. The only temporary, and unintentional, departure from the rule is to be found in the Act of May 28, 1936, supra, which, as above indicated was amended by Congress, with confession of error, on June 14, 1937, and now appears as so amended in Title 48 U.S.C.A. § 44b.

Surely, since a majority, or 65 or some other per centum, of the votes cast was deemed sufficient in each instance to authorize issuance of general obligation bonds, it is all but incredible that Congress should have intended to require a majority vote of all electors residing in the city, whether voting or not, to approve the issuance of revenue bonds for the redemption of which no taxpayer or resident of the city can be held liable.

In view of all of the circumstances the conclusion is irresistible that the intent of Congress was that the revenue bonds authorized by the Act of March 6, 1946, if otherwise valid, might be issued upon approval of a majority of the qualified electors voting at the election.

The other objections to the issuance of the bonds in the instant case brought to attention of the Court by affidavits and arguments, are not mentioned or even suggested in the plaintiff's complaint, and no decision is now given thereon.

For the reason that the only challenge to the validity of the bonds raised by the averments of the complaint is found to be without foundation in law, the application for injunction pendente lite is denied.