MADISON COUNTY v. PRIESTLY, Treasurer, et al.

*(Circuit Court, S. D. Mississippi. May 15, 1890.)*

CONSTITUTIONAL LAW—RAILROAD AID BONDS.

Under Const. Miss. art. 12, § 14, which declares that the legislature shall not authorize any county, city, or town to aid any corporation, unless two-thirds of the qualified voters of such municipality shall assent thereto at a special election, railroad aid bonds are not invalidated in the hands of innocent purchasers by the fact that less than such majority voted for them, where more than two-thirds of the votes cast were in favor of issuing the bonds. Following *Carroll Co.* v. *Smith,* 4 Sup. Ct. Rep. 539.

In Equity. On demurrer to bill.

*E. E. Baldwin,* for complainant.

*Walter Troller,* for the bank.

*E. Mayer,* for Mr. Smith.

HILL, J. This bill was filed by complainant against defendants in the chancery court of Madison county, and removed to this court by the defendants Mrs. Condet Smith and the Bank of Commerce, both non-residents of this state. The bill seeks to enjoin Priestly, the treasurer, from paying the interest and bonds, described in the bill heretofore issued by the supervisors of Madison county to the Vicksburg, Canton & Yazoo City Railroad Company, and purchased and now held by said defendants and others. The questions to be decided arise upon the demurrer of these defendants to complainant's bill.

The allegations stated in the bill as a defense to the payment of said bonds and interest are that the board of supervisors had no power to issue the same; that they purport to have been issued in payment for capital stock subscribed by said board in said corporation; and that, to have authorized said board to subscribe for said stock, and to issue said bonds, with interest coupons attached, it was necessary that the assent of two-thirds of the qualified voters of said county should have been obtained, such number being ascertained by a vote had thereon at a general or special election held for said purpose. The bill alleges that there were 6,275 registered voters in said county, and that, at the time said subscription was ordered to be made, the board of supervisors entered the order declaring that 1,067 votes were two-thirds of the votes of the qualified voters in said county, and that number of votes were cast at the election held for the purpose stated, which, the bill avers, was then known to be untrue. The bill admits the authority for holding said election, and that it was held; that there were 1,067 votes cast in favor of said subscription, and 77 votes against the subscription; that the order of the board was made, declaring that the election had been held in pursuance of the act of incorporation of said railroad company, and that more than two-thirds of the qualified voters of said county had voted in favor of said subscription, which order was made on the 27th day of April, 1872, directing the issuance and delivery of the bonds, with interest coupons attached, in payment for the stock which the president was

v.42F.no.14—52

directed to subscribe; that said bonds, with interest coupons attached, were before the 11th day of September, 1873, issued and delivered to S. S. Calhoun as trustee for said board of supervisors, and by him delivered to the president of said railroad company on the 11th day of September, 1873, and on other days from that date to the 24th day of September, 1874, and being the bonds and coupons the payment of which is sought to be enjoined in this suit. There are other allegations made in the bill, but they need not be stated to an understanding of the questions raised by the demurrer. The bill does not deny that these defendants are innocent holders for value, without notice.

The decision made by the supreme court of this state in the case of *Hawkins* v. *Carroll Co.*, 50 Miss. 735, is mainly relied upon to sustain the validity of the bonds and coupons involved in this suit. This decision was rendered at the October term, 1874, but was not delivered until March, 1875, and not until those bonds were issued, delivered, and put in circulation. The bill in the case of *Hawkins* v. *Carroll Co.* was to enjoin the board of supervisors or trustees from putting the bonds in circulation; and while the court construed the provision of the constitution of the state prohibiting counties, cities, and towns from subscribing for capital stock, and issuing bonds in payment in railroad corporations, unless assented to by two-thirds of the registered voters therein, the question as to whether or not this construction of the constitution would affect the validity of bonds issued before that time, and held by innocent holders for value, without notice, was not decided in that case, but was reserved. So that decision is not binding in this case. But, if it were otherwise, the decision of the supreme court of the United States of *Carroll Co.* v. *Smith*, 111 U. S. 556, 4 Sup. Ct. Rep. 539, subsequently decided, settles that question in favor of the validity of the bonds issued before the decision of *Hawkins* v. *Carroll Co.*, and the same class of bonds enjoined in *Hawkins* v. *Carroll Co.*, and which, in my opinion, is decisive of this case. The questions now presented were before the court upon the validity of the coupons upon the same bonds in the case of *Smith* v. *Madison Co.*, (decided at June term, 1877,)[1] when the bonds and coupons were held valid, and upon which the interest has been paid up to the filing of this bill. This decision has been fully sustained by the supreme court of this state as to these bonds issued, and in the hands of innocent holders, before the decision of *Hawkins* v. *Carroll Co.*, in the case of *Cutler* v. *Board*, 56 Miss. 115. If any further authority were now wanting to maintain the validity of the bonds and coupons in this case, this decision would be conclusive; and I take it that this bill would not have been filed but for the decision of the supreme court of the United States of *Lake Co.* v. *Graham*, 130 U. S. 674, 9 Sup. Ct. Rep. 654. In that case the bonds were issued in payment of county warrants. The power to do so was limited by the constitution of the state of Colorado to a certain percentage on the assessed value of the taxable property in the county. The court held that the taxable

---

[1] Before the publication of the Federal Reporter began.

value of the taxable property in the county could only be ascertained by reference to the records of the county containing it, and that it was the duty of the purchaser to look to the records, and, if he failed to do so, the recitals in the bonds that they were issued in conformity to the statute did not estop the county from showing that the bonds were issued contrary to the inhibition contained in the constitution, of which provision in the constitution the purchaser was required to take notice. The constitution of this state does not refer to any public record to ascertain the number of voters in the county; and, indeed, there is no record showing conclusively this fact. In the case of *Hawkins* v. *Carroll Co.*, the court holds that the registration books are competent evidence of the number of qualified voters in the county, but not conclusive, and that it is competent to show deaths, removals, and disqualifications, etc. So that the rule laid down by the court in the *Case of Lake County*, relied upon by counsel, does not apply to this case. If other reference were necessary to support the validity of the bonds in this suit, it would be found in the opinion of the supreme court of the United States in the case of *Township of Bernards* v. *Morrison*, 10 Sup. Ct. Rep. 333, (decided at the present term of that court,—reported in the Supreme Court Reporter.)

The cases of *Bank of Commerce*, and that of *Mrs. Condet Smith* are submitted together on demurrer, and are governed by the same rules. The bonds in both cases were issued before the decision of *Hawkins* v. *Carroll Co.*, 50 Miss. 735. The holders in both cases are *bona fide* purchasers for value, without notice, and entitled to recover the amount of the interest coupons held by them, and will be entitled to recover the amount of the bonds when due. The result is that the demurrer to the bill in each case must be sustained, the injunction dissolved, and the bill dismissed, at complainant's costs.