(No. 1238, July 17, 1909.)

T. A. FABRO, Appellee, v. TOWN OF GALLUP, Appellant.

## SYLLABUS.

Two-thirds of those actually voting and not a two-thirds of all the voters of a municipality are required to authorize the issue of municipal bonds under the Act of Congress of March 4, 1898, 30 Stat. 252, and the Act of New Mexico of March 16, 1907, Chapter 35, page 38, Session Laws of 1907, authorizing municipal bonds notwithstanding the limitations on municipal indebtedness, if two-thirds of the qualified voters as defined, shall vote therefor.

Appeal from the District Court for McKinley County, before IRA A. ABBOTT, Associate Justice. Reversed and remanded.

FRANK W. CLANCY for Appellant.

The voters of the town contemplated in the statute, are those who, after the required notice, come to the polls and deposit their ballots. St. Joseph v. Rogers, 16 Wall. 644, 646, 649, 664; Harshman v. Bates Co., 92 U. S. 569; Cass Co. v. Johnston, 95 U. S. 365, 366, 369; State v. Winkelmeier, 35 Mo. 103; State v. Mayor of St. Joseph, 37 Mo. 270; Hawkins v. Carroll Co., 50 Miss. 735; State v. Sutterfield, 54 Mo. 391; Carroll County v. Smith, 111 U. S. 557, 563-565; Sanford v. Prentice, 28 Wis. 362; Cronly v. City of Tucson, 56 Pac. 877, 878; McCrary, Elections, 3ed., par. 173; People v. Warfield, 20 Ill. 163; People v. Garner, 47 Ill.

246; People v. Wiant, 48 Ill. 263; Louisville & N. R. Co. v. Davidson County Ct., 1 Sneed 692; Ang. & A. Corp., 9 ed. 499, 500; Bridgeport v. Housatonic R. Co., 15 Conn. 475; Talbot v. Dent, 9 B. Mon. 526; Lamb v. Cain, 129 Ind. 486, 14 L. R. A. 518, 527, 528; Schlichter v. Keiter, 156 Pa. 119; Philomath College v. Wyatt, 27 Ore. 390; Bear v. Heasley, 98 Mich. 279; Taylor v. McFadden, 84 Iowa, 269; Rickett v. Russell, 42 Fla. 139, 12 So. 771, subdivision VI of opinion; Foy v. Water District, 98 Me. 84; Citizen v. Williams, 49 La. Ann. 422, 37 L. R. A. 769; Worthington v. Board, 71 S. W. 879; Walker v. Oswald, Md., 11 Atl. 712; Sanford v. Prentice, 28 Wis. 361, 362; Knox Co. v. Bank, 147 U. S. 99; Attorney General v. Shepard, 62 N. H. 383.

The enactment of the Statute of 1907 by the Legislative Assembly was a rigthful exercise of legislative authority. Re County Seat, 15 Kan. 500; Vance v. Austell, 45 Ark. 407; College v. Wyatt, 27 Ore. 390; Pickett v. Russell, 42 Fla. 139.

B. F. ADAMS for Appellee.

The Acts of Congress have the same force and effect upon municipal corporations in a Territory as have constitutional or charter provisions in states.

A municipal bond is a contract—a contract to pay money.

Valid contracts can only be entered into by a municipality by strictly complying with the law. 20 A. & E. Enc. of Law 2 ed. 1161, 1162.

A taxpayer who seeks to prevent a bond issue may obtain relief when injunction would not be granted after the bonds have been issued and passed into the hands of bona fide holders. 21 Am. & Eng. Enc. of Law, 2 ed. 33; State v. Moore, 45 Neb. 12; McClure v. Oxford Township, 94 U. S. 429; Woodhull v. Beaver Co., Fed. Case 17,974; Humphreys v. Bayonne, 55 N. J. L. 241; Ritchie v. Franklin Co., 22 Wall. 89 U. S. 75.

The policy of the law is to restrict the contracting of debts by municipal corporations. Humphreys v. Bayonne,

Fabro v. Gallup.

55 N. J. L. 241; 21 A. & E. Enc. of Law, 2 ed. 1171 and authorities cited.

A municipal corporation has no power to issue bonds unless such power be expressly granted. 21 A. & E. Enc. of Law, 2 ed. 32, and authorities cited

The Act of Congress requires the affirmative vote of two thirds majority of all who are qualified to vote. The assent of the voter must be given, not by remaining at home, but the voter must "vote affirmatively for the issuance of said bonds." Cronly v. City of Tucson, 56 Pac. 877, 878, not binding; 19 A. & E. Enc. of Law 506; 614 and 615, and authorities cited; 21 A. & E. Enc. of Law, 2 ed. 33, 48; In re Denny, Ind. 1901, 59 N. E. Rep. 361; State v. Francis, 95 Mo. 51; State v. Winkelmeier, 35 Mo. 103; State v. Stutterfield, 54 Mo. 392; State v. Brassfield, 67 Mo. 331; State v. St. Louis, 73 Mo. 435; Cleveland Cotton Mills v. Cleveland County, 108 N. Car. 684, 13 S. E. 271; Lake County v. Rollins, 130 U. S. 662; Sedg. St. & Const. Law 325; Shellenberger v. Ramsom, 59 N. W. 939; Hurford v. City of Omaha, 4 Neb. 352; State v. Moore, 45 Neb. 12; McClure v. Oxford Township, 94 U. S. 429; Woodhull v. Beaver Co., Fed. Case 17,974; Gavin v. City of Atlanta, 12 S. E. 264; U. S. v. Bellingham Bay Boom Co., 176 U. S. 217; Kansas City M. & B. R. Co. v. J. T. Wiygul, 33 Southern 965; State v. Ruhe, 52 Pac. 276; McCrary on Elections, 3 ed. par. 173; Duke v. Brown, N. C., 1 S. E. 873, 875; Lynchburg & D. R. R. Co. v. Bd. Co. Comrs. Person Co., N. Ca., 13 S. E. 783; 26 A. & E. Enc. Law 668.

## STATEMENT OF FACTS.

This was an action brought by plaintiff, as a taxpayer and voter, against the Town of Gallup to restrain the town from issuing water bonds to the amount of $20,000.00 under the provisions of the act of Congress of March 4, 1898, (30 Stat. at Large, 252), and an act of the Legislative Assembly of New Mexico of March 16, 1907, (Session Laws of 1907, 38). The complaint alleges that an election was held October 22, 1907, for the purpose of voting on the question of the issuance of said bonds; that at

Fabro v. Gallup.

· that time there were two hundred persons in the town who were qualified electors and owners of property subject to taxation therein: that at the election fifty-two votes were cast of which forty-one votes were for the issuance of the said bonds; that at that time and at present, the indebtedness of the town exceeds four per centum of the value of the taxable property in the town; and that therefore the proposed issue of bonds is illegal.

To this complaint defendant interposed a demurrer, the principal question raised being that two-thirds of the qualified voters who voted at the election, having voted in favor of the bonds, the issue was duly authorized notwithstanding the fact that the number so voting was less than two-thirds of all who might have voted. The court overruled the demurrer and defendant declining to plead further, a final decree was entered enjoining defendant as prayed by the complaint.

OPINION OF THE COURT.

McFIE, J.—The Act of Congress authorizes the issuance of such bonds, notwithstanding the limitations of the act of July 30, 1886, with the following proviso:

"PROVIDED, That before any bonds shall be issued the mayor and common council of said chartered municipal corporations shall cause an election to be held in such city or town, and the mayor and common council of such municipal corporation shall cause to be published, in a newspaper of general circulation published in such city or town, a notice of the time and place or places of holding such election. Such notice shall be given at least thirty days before such election. On the question of the issuance of said bonds no person shall be qualified to vote except he be in all respects a qualified elector and owner of real or personal property subject to taxation within the municipality. In case two-thirds of the qualified voters, as above described, shall vote affirmatively for the issuance of said bonds, then the mayor and common council shall issue the same, and not otherwise."

The Act of the Legislative Assembly of New Mexico,

so far as it is brought in question in this case, is as follows:

Sec. 3. On the question of the issuance of said bonds no person shall be qualified to vote except he be in all respects a qualified elector of such city, town or village, and the owner of real or personal property subject to taxation within such city, town or village. The ballots at such election shall read "For the issuance of Bonds," or "Against the issuance of Bonds". In case two-thirds of the qualified voters as above described voting at such election shall vote affirmatively for the issuance of said bonds, then the city council or board of town or village trustees shall issue the same and not otherwise. Such question shall be submitted at either a general or special election."

It is obvious that if the requirements of the above act of Congress and of the Legislative Assembly are met in the election held to authorize the issuance of bonds, the same may be legally issued, notwithstanding the limitations of the act of Congress of July 30th, 1886. The regularity of the election is not questioned, the only point raised being that, the following requirements of the act of Congress were not complied with; namely, "Two-thirds of the qualified voters as above described shall vote affirmatively for the issuance of said bonds."

The complaint alleging that at the time the election was held, there were two hundred qualified voters in the town of Gallup, and that only forty-one voters had actually voted affirmatively for the issuance of the bonds and eleven voted against the bond issue, the appellee contends that the bonds were unauthorized inasmuch as the act of Congress, in its proviso, and also the statute of the Territory require that two-thirds of all the qualified voters of the town of Gallup shall actually vote in favor of issuing the bonds, regardless of whether the election returns show that they participated in the election or not, while on the other hand the appellant insists that two-thirds of the voters as shown by the returns is all the law requires to authorize the issuance of the bonds, and as the

Fabro v. Gallup.

returns show that two-thirds of those voting voted in favor of issuing the bonds, the issuance was authorized and the injunction should not have been granted.

In this jurisdiction the law as declared by the Supreme Court of the United States is the highest authority, and especially true in this case, where an act of Congress is involved.

There is, evidently, but one question to be determined by this court, and that is, whether or not the provision of the Act of Congress above referred to, requiring that "two-thirds of the qualified voters, as above described, shall vote affirmatively for the issuance of said bonds," to authorize the issuance of bonds involved, is complied with, and must be determined, by the returns of an election held for that purpose, showing that two-thirds of the qualified voters voting at  that election, voted in favor of issuing the bonds.

As the record does not show that registration of voters was either required or had for the election or that any other method by which the total number of the qualified voters of the town of Gallup should be ascertained, it would seem to follow, that if the returns of the election are not to be accepted to establish the number of qualified voters, oral proof must be resorted to to ascertain the number of such voters.   That resort  should be had to oral evidence to establish such fact seems, at once, repugnant to several well settled principles of law, and would certainly tend to impair the value of public negotiable securities, concerning which the law is well settled.

The Supreme Court of the United States has had this question under consideration, and on several occasions, in deciding cases in which this question was raised, under statutes practically identical, pointed out the necessity of adhering to the result of the election, as shown by the returns, as the only safe and reliable way of determining the number of qualified voters, notwithstanding the fact that in many cases the returns did not show, "that a majority" or "two-thirds of the qualified voters" did participate in the election, according to the claims of those

relying upon that fact as a defense against the bonds. St. Joseph Township v. Rogers, 16 Wall. 646; County of Cass v. Johnson, 95 U. S. 368; Carrol County v. Smith, 111 U. S. 563; Pacific Imp. Co. v. City of Clarksdale, 74 Fed. 528; Madison Co. v. Priestly, 42 Fed. 818; Lamb v. Cain, 129 Ind. 516; South Bend v. Lewis, 138 Ind. 516; Taylor v. McFadden, 84 Iowa 270; Montgomery County etc. v. Trimble, 104 Ky. 638; Shearer v. Bay County Supervisors, 128 Mich. 556; Tinkle v. Griffin, 26 Mont. 432; Davis v. Brown, 46 West Va. 719.

In the case of St. Joseph Township v. Rogers, supra, the act of Feby. 28th, 1867, of the Missouri Legislature, provided that bonds were authorized to be issued, "when it shall appear that a majority of all the legal voters of such township voting at such election," have voted therefor, etc. It appears that an election had been held for the issuing of bonds prior to the enactment of this statute, and in a proviso to section 13 it was provided substantially, that where an election had already been held, "and a majority of the legal voters of any township were in favor of a subscription," no other election should be held, etc. The question, therefore, arose as to how this majority of legal voters should be ascertained, as counsel for the plaintiff in error, contended: "A statute which authorizes township officers to issue bonds only when an election "may have already been held, and a majority of the legal voters of the township were in favor" thereof, does not authorize the issue of bonds when less than a "majority of the legal voters" were in favor thereof, although there were "a majority of all the legal voters voting at such election."

The facts proven were, that there were three hundred legal voters in St. Joseph Township at the time of the election, of whom only seventy-five voted, but a majority of the seventy-five voted in favor of issuing the bonds.

In deciding the case the court said: "Responsive to the first objection, it is insisted by the plaintiff that the legislature in adopting the phrase "a majority of the legal voters of the township" intended to require only a majority

of the legal voters of the township voting at the election notified and held to ascertain whether the proposition to subscribe for the stock of the company should be adopted or rejected, and the court is of the opinion that such is the true meaning of the enactment, as the question would necessarily be determined by a count of the ballots."

"Tested by these considerations, it is clear that an election was held within the meaning of the act of the legislature, and that a majority of the legal voters of the township did vote in favor of the subscription, as the proofs show that a meeting was called and held, and that the majority of the legal voters voting at the meeting, voted in favor of the proposition." St. Joseph v. Rogers, 16 Wall. 646, 649, 664."

In the case of Harshman v. Bates County, 92 U. S. 569, the court construed a clause in the Missouri Constitution, which prohibited the legislature of that state from enacting legislation authorizing counties, cities or towns from becoming stockholders or loaning their credit to corporations "unless two-thirds of the qualified voters of such county, city or town, at a regular or special election to be held therein, shall assent thereto." This language seems to be practically identical with that used in the act of congress in the case at bar. The words, *assent thereto* would seem to mean the same thing as *affirmatively vote for,* as both would be established by voting in favor of the issuance of the bonds. But the real question, lies back of that proposition, namely, that the only way of determining who are qualified to vote affirmatively or give their consent, is by the result of the election as shown by the returns thereof.

The Supreme Court of the United States in deciding that case affirmed the decision of the Supreme Court of Missouri against the validity of bonds subscribed.

In the case of Cass Co. v. Johnston, 95 U. S. 365, the case of Harshman v. Bates and other Missouri cases were reviewed at length in the following language:

"In Harshman v. Bates Co., 92 U. S. 569 (XXIII,

747), we incidentally decided the act to be unconstitutional; but the point then especially in controversy was as to the applicability of this constitutional prohibition †, township organizations. It was impliedly conceded upon the argument that, if the Constitution did apply, the law could not be sustained; and we accepted this concession ar truly stating the law of Missouri. Now, however, the question is direcly presented, whether the provisions of the Constitution and the statute are not substantially the same. On the one hand, it is contended that the Consitution requires the actual vote of two-thirds of the qualified voters of the township in favor of the subscription; and, on the other, that the requisite assent is obtained if two-thirds of those voting at the prescribed election shall vote to that effect." Chas. Co. v. Johnston, 95. U. S. 365.

"In State v. Winkelmeier, 35 Mo. 103, decided in 1864 just previous to the adoption of the constitution, under a law which empowered the city authorities of St. Louis, to grant permission for the opening of establishments for the sale of refreshments on any day in the week, "whenever a majority of the legal voters of the city" authorized them to do so, it was held that there must be a majority of the voters participating in the election at which the vote was taken, and not merely a majority of those voting upon that particular question. The judge who delivered the opinion of the court did, indeed, say, "the act expressly requires a majority of the legal voters; that is, of all the legal voters of the city, and not merely all those who at a particular time choose to vote upon the question." But this must be read in connection with what follows, where it is said that "It appeared that more than thirteen thousand voters participated in that election and that only five thousand and thirty-five persons voted in favor of giving to the city authority and two thousand and one persons voted against it. x x x It is evident that the vote of five thousand out of thirteen thousand is not the vote of a majority." Taking the opinion as a whole it is apparent that there

was no intention of deciding that resort must be had elsewhere than to the records of the election at which the vote was taken to ascertain whether the requisite majority had been obtained. But, however this may be, in 1866 a similar question was presented to the same court in the case of State v. Mayor of St. Joseph, 37 Mo. 270. There it was provided that the mayor and council of St. Joseph should cause all propositions "to create a debt by borrowing money," to be submitted "to a vote of the qualified voters of the city," and that in all such cases it should require "two-thirds of such qualified voters to sanction the same." A proposition to borrow money for the improvement of streets was submitted to a vote of the voters at an election called for that purpose, and resulted in a majority in favor of the measure, the mayor declined signing the necessary bonds, because "he was in doubt whether the matter was to be determined by two-thirds of all the votes polled at the special election, or by two-thirds of all the voters resident in the city, absolutely, whether voting or not." Thereupon a suit was instituted to settle this question, and to compel the mayor, by mandamus, to issue the bonds. In giving its decision the court said: "We think it was sufficient that two-thirds of all the qualified voters who voted at the special election, authorized for the express purpose of determining that question, on public notice duly given, voted in favor of the proposition. This was the mode provided by law for ascertaining the sense of the qualified voters of the city upon that question. There would appear to be no other practicable way in which the matter could be determined." The writ of mandamus was accordingly issued.

In the case of Hawkins v. Carroll Co., 50 Miss. 735, the Supreme Court of Mississippi had under consideration a statute of that state which authorized municipalities to subscribe to the capital stock of a railroad company, but the municipal authorities, before doing so, were required, "to submit the question of subscription or no subscription to the decision of the qualified voters of said county, city or incorporated town, at a special or regular

election to be held therein and if two-thirds of the qualified voters be in favor of said subscription, then the authorities were required and authorized to make the subscription."

It appears that under this statute an election was held in Carroll County, at which time there were 3,129 voters on the registration lists of the county, and it was alleged that there were that number of qualified voters in the county; this being admitted in the demurrer to the complaint. There were only 1280 voted at the election, of whom 918 voted in favor of the proposition. It was contended in the trial of the case the registration lists determined the number of the qualified voters of the county and that it required two-thirds of the registered voters to carry the proposition and not two-thirds of those actually voting as shown by the result of the election. The Supreme Court of Mississippi held that the registration books were competent as evidence of the number of qualified voters in the county, and as less than two-thirds of the registered voters had voted in favor of the proposition, it had failed, and the decision of the Chancellor who dismissed the bill for injunction was reversed.

The case of Hawkins v. Carroll County was reviewed by the Supreme Court of the United States, in the case of Carrol County v. Smith, 111 U. S. 556, and as will be seen was distinctly disapproved. The court says:

"We have, however, considered the reasoning of the Supreme Court of Mississippi, in its opinion in the case of Hawkins v. Carrol Co., with the respect which is due to the highest judicial tribunal of a state, speaking upon a topic as to which it is presumed to have peculiar fitness for correct decision, and, while we are bound to admit the carefulness and fulness of its examination of the question, we are not able to adopt its conclusions. On the contrary, we are constrained to follow the decision in St. Joseph v. Rogers, 16 Wall. 664 (83 U. S. XXI, 338), and adhere to the views expressed by this court in Cass Co. v. Johnston, 95 U. S. 360 (XXIV, 416), in deciding the same question upon the construction of a provision of

Fabro v. Gallup.

the constitution of Missouri, which is identical with that
of the constitution of Mississippi under consideration.  It
was there declared and decided, that "'All qualified vot-
ers, who absent themselves from an election duly called,
are presumed to assent to the expresssed will of the
majority of those voting, unless the law providing for the
election otherwise declares.  Any other rule would be pro-
ductive of the greatest inconvenience and ought not to
be adopted, unless the legislative will to that effect is
clearly expressed."  ' In Missouri, as in Mississippi, there
was a constitutional provision requiring a registration of
all qualified voters.  State v. Sutterfield, 54 Mo. 391.''

"But this reasoning, as it seems, to us, does not meet,
much less overcome, the difficulty of the argument.  The
constitution of Mississippi, although it does not recognize
any voters as qualified, except such as are registered, does
not make all persons, registered as such, qualified.  And
yet, if it is to be construed, in the clause in question,
as referring to the registration as conclusive of the num-
ber of qualified voters, then no proof is competent to
purge the list of those who never were qualified or have
died, removed or become otherwise disqualified thus ob-
literating the distinction between registered and qualified
voters; and if, on the other hand, it is to be construed
as meaning voters qualified, in fact and in law, without
reference to the sole circumstance of registration, then
the body of electors is as indefinite as though there were
no registration, and the determination of the whole num-
ber, if an actual enumeration is required to determine
how many are two-thirds thereof, is completely a matter
in pais, and must be inquired of and ascertained in each
case by witnesses.  The difficulty, if not the impossibility,
of reaching results, by such methods, amounts almost to
demonstration, that such could not have been the legislative
intent, or the meaning of the constitution.  The number
and qualification of voters at such an election, is determin-
able by its result as canvassed, ascertained and declared
by the officers appointed to that duty, or as subsequently
corrected by a contest or scrutiny in a direct proceeding,

authorized and instituted for that purpose; it cannot be contested in any collateral proceeding, either by inquiry as to the truth of the return or by proof of votes not cast, to be counted as cast against the proposition, unless the law clearly so requires. In our opinion, the constitution of Mississippi did not mean, in the clause under consideration, to introduce any new rule. The assent of two-thirds of the qualified voters of the county, at an election lawfully held for that purpose, to a proposed issue of municipal bonds, intended by that instrument, meant two-thirds of the qualified voters present and voting at such an election in its favor, as determined by the official return of the result. The words 'qualified voters', as used in the constitution, must be taken to mean not those qualified and entitled to vote, but those qualified and actually voting. In that connection, a voter is one who votes, not one who, although qualified to vote, does not vote. Carrol County v. Smith, 111 U. S. 557, 563, 564-5."

This case seems to be directly in point in this case and to be conclusive of the method of determining the number of qualified voters under such constitutional or statutory provisions to the effect that where the legislature has failed to provide a method by which the number of qualified voters shall be determined, it must be determined by the result of the election and not by the testimony of witnesses.

Counsel for appellee, in a brief disclosing very considerable research, refers the court to the case of Cleveland Cotton Mills v. Commissioners of Cleveland County, 108 N. C. 684. This case I think may be said to sustain the position of the appellee, and so far as that state is concerned, it would be conclusive; but it cannot be held to change or overrule the construction placed upon similar language by the Supreme Court of the United States in the cases to which we have referred at length.

The Mississippi case held substantially to the same effect, but the holding was disapproved in Carrrol County v. Smith supra, a case of conclusive force in this jurisdic-

tion. We are also referred to the case of Gavin v. City of Atlanta, 12 S. E. 262. This case does not appear to be in point for the reason that, the charter of the city authorizes the mayor and council to provide a special method of registration of voters prior to any municipal election in that city, and the court held, that where a special registration was required prior to a special election for the issuance of bonds in that city, the question whether two-thirds of the qualified voters thereof, voted in favor of the issuance of the bonds, was to be determined by such registration. This case is unlike the case at bar, therefore, because a method of determining the number of qualified voters was provided for in the city charter, whereas no registration of voters, was either required or had for the election in the town of Gallup. The case from Mississippi is different from the Georgia case also in this, no special registration was required for the election in Mississippi, and a registration made for a prior election was used, but the court said it was not proper to use it for the purpose of determining the number of qualified voters; that the result of the election must be resorted to for that purpose.

The Supreme Court of Arizona in a very recent case, construed the identical provision of the act of Congress of March 4th, 1898, now under consideration. The case arose in this way; a few years ago the city of Tucson acting under the same act of Congress, held an election to determine whether or not bonds to the amount of one hundred thousand dollars should be issued, and at that election two-thirds of the votes cast were in favor of the bonds. A taxpayer of the city brought suit to restrain the mayor and common council from issuing the bonds, and alleged that there were in the city at the time of the election over 800 electors qualified to vote, but that of these only 230 voted, 196 for and 28 against the issuing of the bonds. This case seems to be on all fours with the case under consideration.

A demurrer was interposed to the complaint, which was sustained by the court and the taxpayer appealed.

In deciding the case the Supreme Court of Arizona said:
"The question whether at the election the issuance
of the bonds was assented to by a sufficient number of
voters to authorize the issuance of the bonds under the
requirements of the Congressional act referred to turns
upon the construction of the term 'two-thirds of the quali-
fied voters as above described,' as this language was
used in said act. There is a clear distinction between an
elector and a voter. The former is one who legally has
the right to vote, and the latter is one who not only poss-
esses the right, but who does actually vote. Sanford v.
Prentice, 28 Wis. 362. In Carrol Co. v. Smith, 111 U.
S. 556, 4 Sup. Ct. 539, the Supreme Court in constru-
ing the term 'qualified voters', as used in the Mississippi
constitution, said that these words 'must be taken to mean,
not those qualified and entitled to vote, but those quali-
fied and actually voting. In that connection a voter is one
who votes, not one who, although qualified to vote, does
not vote.' That Congress recognized in the act the dis-
tinction between the words 'elector' and 'voter' we think is
apparent from the fact that, in the preceding sentence to
the one containing the phrase under consideration, the
former word is used in its precise sense. It is contended
by counsel for appellant that the phrase 'as above described'
enlarges the meaning of the words "two-thirds of the quali-
fied voters' so as to give them the meaning of two-thirds
of those qualified to vote. We think a simpler and more
grammatical method of arriving at the meaning of the
phrase would be to transpose the word 'qualified' so as
make the sentence read, 'In case two-thirds of
the voters, qualified as above described, vote af-
firmatively,' etc. In this way we do no violence
to the structural arrangement of the words, and
yet adhere to the exact meaning of the language used.
Applying this construction of the congressional act to the
facts as stated in the complaint, and we find that the issu-
ance of the bonds in question was authorized by the affir-
mative words of more than 'two-thirds of the qualified

voters, as above described,' of the city of Tucson. Cronly v. City of Tucson, 56 Pac. 877-8."

The Supreme Court of Indiana in the case of Lamb v. Cain, had under consideration the following provision of the constitution of a church society:

"There shall be no alteration of the foregoing constitution, unless by request of two-thirds of the whole society." In deciding the case the court said:

"But we are of the opinion that the number of votes cast at the election is to be considered for the purposes of this case, as constituting the number of legal voters belonging to the church. Any other rule would be impracticable, and would lead to endless confusion and contention." Lamb et al v. Cain et al, 129 Ind. 486." In support of this case, see Schlichter v. Keiter, 156 Pa. 119; Philmoath College v. Wyatt, 27 Ore. 390.

In Taylor v. McFadden, 84 Iowa, 269, the Supreme Court of Iowa said:

"It is contended that the proposition to authorize waterworks did not receive the required number of votes. It did receive a majority of the votes cast, but not a majority of all the votes which, it is alleged, were of the town. The approval must be by a 'majority of the voters of the city or town' but how is that to be determined. There is no provision for ascertaining the number of persons in the town who were qualified to vote at that election, except as they appeared and voted. It is only by the vote cast that the result of such elections can be determined. That those not voting are to be counted is at variance with our system of elections. Ample notice is provided to electors, and the result must necessarily be determined by the vote cast. The voters of the city or town, contemplated in the statute, are those who, after the required notice, come to the polls and deposit their ballots."

It does not seem necessary to pursue the matter further, as the authorities referred to seem to be conclusive of the case and of the only issue raised and urged in the brief of appellee. Considerable stress is laid upon the

word "affirmatively" and it certainly is important, but its full force is just as applicable to the votes cast as otherwise. As we have concluded that, in the absence of any other provision for the ascertainment of the number of qualified voters, resort must be had to votes cast at the election, it then becomes necessary to ascertain whether two-thirds of those voting upon the question voted affirmatively or not. In this case 41 voters voted for the issuance of the bonds, while only 11 voted against the issuance, a total vote of 52.

As more than two-thirds of those voted affirmatively or in favor of the issuance of the bonds, it follows that authority was given the proper officers of the town of Gallup to issue the bonds voted for at the election.

We are of the opinion that the court below, should have sustained the demurrer to the complaint and dismissed the cause, and that in overruling the demurrer and granting the injunction prayed for, error intervened for which the cause must be reversed.

The cause is reversed and remanded with directions that the demurrer be sustained, that the injunction heretofore granted be dissolved and the cause dismissed at the costs of the appellee. It is so ordered.